IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2006 JUN 26 A 10: 35

| | |
|---|---|
| CURLY YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO.: |
| ) | 1:06CV563 |
| HONEYWELL TECHNOLOGY ) | |
| SOLUTIONS, INC., ) | |
| ) | **DEMAND FOR JURY TRIAL** |
| Defendant. ) | |

## COMPLAINT

JURISDICTION

1. The jurisdiction of this court is invoked pursuant to 28 U.S.C. 1331, 1343, 42 U.S.C. 1981, as amended, 28 U.S.C. 2201 and 2202. The jurisdiction of this court is invoked to secure protection for and to redress the deprivation of rights secured by 42 U.S.C. 1981 providing relief against racial discrimination.

II. PARTIES

2. Plaintiff is an African-American male and lives at 705 Mill Avenue,

1

Enterprise, Al  36330.

3. Defendant is a corporation doing business in the State of Alabama.

4. Plaintiff's supervisors involved in the decision to terminate him were all white and they were, up the ladder, Jerry Temple, Ken Erikson and Carolyn Woodburn.

5. Plaintiff was replaced by a white male named Chris Hines, who is related to Jerry Temple, plaintiff's supervisor and who was involved in plaintiff's termination.

6. Plaintiff also failed to get a promotion that he was qualified to receive and the promotion was given to a white male, Robert Hadley.

7. Plaintiff also made race complaints in regards to the promotion of an African-American, Calvin Flowers, to Ken Erickson, upper management. Plaintiff told Mr. Erickson that Calvin was discriminated against because he was black, by Pat Little and William Culpepper. The complaint was made about 2 ½ to 3 years prior

to plaintiff's termination.

## III. STATEMENT OF PLAINTIFF'S CLAIMS

5. TERMINATION: Plaintiff alleges that he was terminated after years on the job on May 30, 2006. The reason given to him was poor performance supported by numerous write-ups.

His job was to "maintain" the small arm firing range. There were two other firing range workers, under the same supervisor, Jerry Temple, who Ken Erickson.

On May 30, 2006, Chris Hines, who was a white, and who was related to Jerry Temple, who is white, was similarly situated to plaintiff, in that Mr. Hines also maintained a field where munitions were fired. Upon reasonable belief, plaintiff believes that Chris Hines's performance was the same as plaintiff's or worse and yet Mr. Hines is still employed there, and in fact, took over plaintiff's duties. Plaintiff alleges that Mr. Hines has been written up several times–these are posted on the wall of shame--and even put on a year's probation, but that he is still employed there. Plaintiff alleges that on one occasion Mr. Hines injured himself and cost the company money–the company had money deducted from the government award fee due to his grossly violating a safety procedure, normally a terminating offense (See company

policy), but he was not terminated.

Plaintiff alleges that the reason he was given for being terminated was because two mannequin pop-up targets were "missing from the inventory storage" at CPQC range, during a surprise and first time ever, audit of the storage shed. Plaintiff alleges that he was not accused of trying to steal them, but rather, he was accused of improper maintenance of government equipment, which is exactly what Hines did when he injured himself–failure to lock-out tag-out of company equipment. Hines cost the company thousands of dollars and plaintiff's failure, if true, cost them nothing. The two missing mannequins were not missing at all. They were on plaintiff's truck waiting to be transported to the storage shed.

Prior to this March 3, 2005, several white employees were involved in improper accountability of hay, which resulted in the government fined them moneys lost from the award fees. None of the white men were terminated

Plaintiff alleges that over the course of a year, he replaces hundreds of mannequins in the four ranges that he maintains. Plaintiff that during the entire time he has maintained the ranges, one and half years, that he has never run out of mannequins, nor has anyone filed a complaint against the plaintiff that there was a shortage of mannequins.

Plaintiff further alleges that other whites have had inventory shortages and

where not terminated. The supply room in office in the bay area comes up short in its annual audit every year and no one is terminated. Only white employees have keys to the supply room.

Plaintiff alleges that James T. Garrett, senior HR Generalist from Columbia, MD informed plaintiff that he was being terminated and that Mr. Garrett must have known through his position, that the reasons for terminating plaintiff were not legitimate business reasons.

Plaintiff also alleges that the write-ups, relative to how other whites were treated, were excessive related to the offense and that other white employees who had broken the same alleged rule or similar alleged rule(s) were either not written up at all or received lesser warnings.

Plaintiff alleges that he was put on a year's probation for one year for not filling out a PMCS form before driving his truck, in contradiction to the written company policy which calls a written warning for a 1st offense. This was plaintiff's first offense. Furthermore, plaintiff says that he performed the PMCS before driving the truck, was out a forms, and drove the truck 75 yards to get a form and was written up for that. William Culpepper, a white male, had about six PMCS violations before he was finally terminated. Clearly, he was not disciplined to the same severity as plaintiff.

Plaintiff was suspended for five days in January 06 for having a coke can and candy wrapper in the can holder and in the truck bed there was a coke can and a W-D Forty can. He didn't leave the trash in his truck, but another truck operator, who was riding with him did. That was a white female and she was not disciplined. This is a violation of policy 06-05. The disciplinary policy calls for a verbal warning and plaintiff was given a 5 day suspension. Plaintiff alleges that he has seen thousands of trucks after working hours or before working hours, with trash in them and to his knowledge he is the only person to have ever received a suspension for a first time offense of having a coke and candy wrapper in the cab and a coke and w-d forty can in the bed.

Plaintiff alleges that his termination was based on race or it was based on retaliation for complaining about race discrimination in the work place.

6. DIFFERENT TERMS AND CONDITIONS: Plaintiff alleges that he was treated differently in the terms and conditions of his employment in that the other white employees who broke the same alleged rule(s) were either not disciplined at all or were given lesser disciplines. Plaintiff that he was put under surveillance and heightened scrutiny and other white employees were not.

7. PROMOTION: Plaintiff alleges that he was the best qualified for a position under Doug Reston, white male, and that he scored highest on the test but was denied the promotion and it was given to a lesser qualified white male, Robert Hadley. The normal policy is for the highest test scorer to the job. The company varied from its own policy to give the job to a white male.

8. RETALIATION: Plaintiff alleges that he filed a complaint with Jerry Temple and Ken Erickson, on behalf of Calvin Flowers, a black male, complaining that Mr. Flowers was the most qualified person for the job as compared to the other white candidates and that to not give him the promotion would be race discrimination. Plaintiff alleges that after he made this complaint, the Defendanst(s) began a campaign of retaliation against him by looking for ways to have him terminated. Plaintiff alleges that in addition to what he has already stated, he was falsely accused of violence in the work place by a Pat Little, white male and that even though the accusation was patently false, and proven to be patently false, no action was taken against Pat Little for bringing about false charges against the plaintiff.

9. The Plaintiff avers that as a consequence of the Defendants' illegal discrimination, Plaintiff have suffered mental anguish and other damages.

11. Plaintiff alleges damages under Section 1981.

## IV. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests the following relief:

1. Grant Plaintiff an order requiring Defendant to make Plaintiff whole by granting appropriate declaratory relief, compensatory and punitive damages; and

2. Grant Plaintiff a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate 42 U.S.C. 2000(e).

3. Plaintiff prays for such other and further, different, or additional relief as justice may require.

Jeffrey W. Bennitt ASB N51J
BEN004

Jeff Bennitt & Associates, LLC, P.O. Box 383063
Birmingham, Al   35238-3063
Suite 3A 4898 Valleydale Rd., Birmingham, Al 35242 (205) 408-7240
fax: (205) 408-9236      e-mail: Bennittlaw@aol.com

PLAINTIFF DEMANDS A TRIAL BY JURY

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL**

**Honeywell Technology Solutions, Inc.
AGRC Building
24309 Ft. Rucker, AL 36362**