## DECLARATION OF KENNETH ERICKSON

1. My name is Kenneth Erickson. I am a resident of the State of Alabama, over the age of 19 years, and otherwise competent to give this declaration. The facts contained in this declaration are based upon my personal knowledge.

2. I live in Enterprise, Alabama. I am Caucasian. I was hired as the Project Manager for the Honeywell Technology Solutions Incorporated ("Honeywell") in 2002. As Project Manager, I hold the highest level position at the Honeywell site at Ft. Rucker. I supervise all the employees, which total 50 at the present time, and work with Army personnel in insuring that the work Honeywell has contracted to perform is handled and completed in compliance with Army and Honeywell standards.

3. I do not have the authority to fire any Honeywell employees, but must take my recommendations for discipline or termination to Honeywell Human Resources. At the current time, I work with Human Resources Representative, James Garrett.

4. Before I worked with Honeywell, I was enlisted in the Army Reserve and was a Military Technician for the Department of Defense and retired from both in 2002.

5. Honeywell provides preventative maintenance as well as building services to the gunnery ranges at Ft. Rucker, located near Ozark, Alabama. The Army has a number of different gunnery ranges including aviation ranges where Army personnel shoot at targets from aircraft to small arms ranges where personnel shoot at targets. These ranges are very dangerous based on their use and can go "hot" at any time. The aviation ranges are extremely dangerous as personnel are shooting at targets from an elevated position in aircraft.

6. The Army requires that all personnel, including Honeywell employees, report their location at all times due to the danger involved at the ranges. Sleeping or not being entirely alert at the ranges is unacceptable and is considered a gross safety violation.

7. Honeywell contracts with the Army to provide its services to the gunnery ranges. Honeywell's performance is reviewed on a quarterly basis and Honeywell is rated on such items as safety, personnel and performance. Honeywell employees are expected to follow certain Army policies. Certain violations of Army policy can result in a deduction from the quarterly fee award wherein Honeywell makes its profit. Honeywell's liaison with the Army is Joe Webers, the Contract Officer Representative ("COR"). Honeywell employees regularly interact with either enlisted or civilian Army personnel at Ft. Rucker and the Army is constantly checking on the quality of Honeywell personnel.

8. I met Curley Young when I was hired with Honeywell. While I had heard he was a troublesome employee, who did not perform well, I decided I would clean the slate and form my own opinion about Mr. Young. Mr. Young was Junior Range Tech which meant he was assigned to certain ranges, including some aviation ranges when I started. He was responsible for helping with landscaping, maintenance at the ranges and upkeep of the ranges. Mr. Young has been a Junior Range Tech during his entire tenure with Honeywell.

9. Unlike my predecessors, I do not remove write-ups from personnel files after a year. I believe it is important to review personnel histories for improvement or decline.

10. Honeywell provides training on anti-discrimination including on-line testing and training from Human Resources.

11. Each year, Mr. Jerry Temple, the Crew Chief over the Range Techs and I, reviewed the Honeywell Five Initiatives and 12 Behaviors regarding Ft. Rucker Site Policies with the

Junior Range Techs. These policies covered everything from truck maintenance to safety precautions to discipline and attendance policies. While the numbers of the policies changed each year, the substance of the policies remained the same. For example, each Honeywell employee provided with a government vehicle was aware that he or she had to carry a Preventative Maintenance Services and Checks form ("PMCS") with them at all times. Honeywell employees were also aware that the truck had to be clean and safe at the end of the day as they were subject to random checks by both Honeywell's Quality Assurance Inspector and Army personnel.

12. I was aware that Army personnel, specifically Bill Leyh, had found Mr. Young asleep at the gunnery range before I was hired. On one occasion, I was driving around the ranges with Mr. Leyh and we found Mr. Young in his truck and he appeared to be reading a magazine. I was extremely embarrassed when I also found out that Mr. Young had not called in his location, as required. I found Mr. Young in his truck on many occasions when he should have been working. I would perform inspections on all Range Techs during periodic spot checks. I did not check on or watch Mr. Young more than any other Range Tech. However, inevitably, when I did watch Mr. Young, he was either sitting in his truck or not working.

13. I was aware that Mr. Temple had a hard time supervising Mr. Young. Mr. Young could be argumentative and seemed to complain a lot about his assigned tasks. I was also aware that other personnel resented having to help Mr. Young, because he was slow or not working. His actions, or better said, inaction, affected morale.

14. I was also aware that Honeywell's Quality Assurance Inspector, Thomas, Lavar, a black male, was very frustrated with Mr. Young. Mr. Lavar did not believe that Mr. Young cared about policies and constantly found Mr. Young in violation of PMCS requirements.

15. Mr. Chris Hines, became a Junior Range Tech in 2004. Mr. Hines is an excellent employee and never complains. I have not found him on the range not working, unlike Mr. Young, and Mr. Hines is willing to do whatever it takes without comment. The two men are not comparable employees.

16. Mr. Hines has only two write-ups since he has been hired and one of those was from his immediate supervisor, Jerry Temple, which means it is not as severe. The first write-up involved Mr. Hines' failure to lock-out tag-out properly and shocking himself on equipment. He was written up for this by me, and the write-up remained in his file even though we later learned he had not been trained on this particular configuration. The second write-up by Temple involved the fact that Mr. Hines was driving his truck with something extending beyond the bed of the truck without a flag.

17. Mr. Hines and Mr. Young have never had more than one helper at the same time. When there are certain inspections and either one is behind, other personnel will help each one if needed; however, Mr. Hines has never had more helpers assigned to him than Mr. Young.

18. Mr. Young applied for an Electronic Tech position in November 2005. He did not have the required electrical degree from a vocational or technical school or the military equivalent; however, if he was the most qualified, I intended to ask the Army for a waiver for the requirement. Jerry Waller, an outside candidate met all the requirements and made the highest score on the test; however, he did not take the job. The job was awarded to Robert Hadley, who had an electrical degree and over six years of electrical maintenance experience, even though Mr. Young made a few points higher on the test. Mr. Hadley was clearly more qualified for the position. Mr. Young did not have the required degree despite my suggestion on a previous performance review that he work on his electrical skills.

19. Subsequent to this application, I suggested to Mr. Young that he could apply for a Safety position, but he informed me that he could not pass the background check.

20. Mr. Young participated in Honeywell's Six Sigma program wherein Honeywell employees study an employment issue, in this case poor inventory procedures, and devise a better practice. At that time, Honeywell was not accounting for all its inventory in a supply closet. Mr. Young worked on procedures to better account for inventory including the use of a 3318 form to denote pulling objects from the supply rooms.

21. Mr. Young was terminated for his final three violations of basic Honeywell and Army policy. The first write-up occurred in March 2005, after Mr. Young was found without a PMCS form even though he is to perform preventative maintenance on his truck each day. Mr. Lavar found this violation and wrote a memo and I authorized the final write-up after sending it through HR. If Mr. Young had been found without his PMCS forms by the Army it would have resulted in a penalty to the fee award. Mr. Young was placed on probation for a year. I was aware that Mr. Lavar was very frustrated with Mr. Young on this issue.

22. I have also written up William Culpepper, a white male employee, for a PMCS violation, and all employees are checked for this form.

23. Mr. Young was written up a second time, in December 2005, for leaving his government issued truck in complete disarray and in a dangerous state. He left a blower full of gasoline in the cab of the truck under a seat full of spray paint cans that were not stored in a secondary container. He also left trash in the truck and left oil and paint outside of secondary containers. This was unacceptable and a very dangerous safety violation and because he was already on probation, Mr. Young was suspended for a week. Again, HR approved this action.

24. I have also written up Chris Hines, Debbie Wood, William Culpepper, and David

Husey, all Caucasians, as well as Thomas Lavar, for safety violations.

25. Mr. Young's final violation occurred in March 2006. Gregory Clay, a black male and Supply Technician for Honeywell, found that Mr. Young's inventory was not correct. Specifically, Mr. Young had two mannequins missing from his supply area that was not noted on the Form 3318 - the very practice Mr. Young had devised in his Six Sigma program. If this had been found by the Army, it would have resulted in a fee award violation.

26. Since the Six Sigma program, Mr. Young is the only employee who has had consistent problems with inventory control. I had already verbally warned him on this matter.

27. At this point, based on Mr. Young's attitude, recent write-ups and overall performance, I recommended his termination to James Garrett. Mr. Garrett made the final decision to terminate Mr. Young.

28. After Mr. Young's termination, I was commended for the decision in a quarterly performance review from the Army. I was aware that Army personnel had long been frustrated with Mr. Young's continued employment by Honeywell despite his poor performance.

29. I placed Chris Hines on Mr. Young's ranges to help out until we could hire another Junior Range Tech. Chris Hines performed these duties in addition to his own, without extra pay.

30. In 2003 or 2004, Mr. Calvin Flowers, a black male, now a Junior Range Tech, applied for a Light Equipment Operator position. He did not have the required CDL license, but I inquired about a wavier from the Army, specifically Joe Webers, which he denied. Mr. Flowers also applied, in 2004, for a Junior Range tech position which Chris Hines was awarded due to his higher test score. Mr. Young never complained to me that Mr. Flowers did not get the job due to his race nor did he mention that the test was racially skewed.

I DECLARE UNDER PENALTY OF PERJURY AND THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

*Kenneth Erickson*
Kenneth Erickson

*17 April 2007*
Date: