IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CURLEY YOUNG, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.: |
| | ) |    6-563 |
| HONEYWELL TECHNOLOGY | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

**RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


/s/ Jeff Bennitt

_____

Jeffrey W. Bennitt ASB N51J
BENOO4


Jeff Bennitt & Associates, LLC,
Suite A-3 4898 Valleydale Rd., Birmingham, Al 35242 (205) 408-7240
fax: (205) 408-9236     e-mail: Bennittlaw@aol.com


CERTIFICATE OF SERVICE

    I hereby certify that  a copy of the above was served on the defendant corporation and former counsel by mail/email on 5/21/07.

Hon. Ryan M. Aday
Ogletree, Deakins, Nash
One Federal Place
1819 Fifth Ave North, Suite 1000
Birmingham, Al   35203

                  /s/ Jeff Bennitt

TABLE OF CONTENTS

| | PAGE |
|---|---|
| **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** | 1 |
| **TERMINATION** | **1** |
| **PLAINTIFF'S FACTS IN TERMINATION CASE** | **1** |
| **A. PRIMA FACIA CASE FACTS:  TERMINATION** | 1 |
| **B. THE COMPANY'S PROFFERED REASON: TERMINATION** | **2** |
| **C. THE PLAINTIFF'S REBUTTAL FACTS FOR TERMINATION CASE** | **3** |
| **ARGUMENT–TERMINATION** | **4** |
| **D. DEFENDANT'S REASONS FOR TERMINATION ARE A PRETEXT** | **4** |
| **E. "OVERALL PERFORMANCE HISTORY AT HONEYWELL"** | **4** |
| **F. THE SUBJECTIVE REASON "OVERALL PERFORMANCE HISTORY"** | **5** |
| **G. GARRETT ADDS  REASONS FOR TERMINATION** | **7** |
| **H. NEW REASONS ARE UNWORTHY OF BELIEF** | **7** |
| **H. NEW REASON #1: A history of disciplines** | 8 |
| **I. NEW REASONS #2:  simple site policy violations** | 10 |
| **J. NEW REASON #3: did not appear to be improving his performance** | 11 |
| **K. DISCIPLINARY POLICY** | 13 |
| **L. COMPARTORS** | **16** |
| **II. TERMS AND CONDITIONS** | **19** |
| **III. RETALIATION** | **19** |
| **IV. CONCLUSION** | **21** |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CURLEY YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.: |
| | ) | 6-563 |
| HONEYWELL TECHNOLOGY | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.  TERMINATION**

**PLAINTIFF'S FACTS IN TERMINATION CASE**

**A.  PRIMA FACIA CASE FACTS:  TERMINATION**

1.  Plaintiff was African-American.  (Plaintiff's exhibit 2, Erickson depo, hereinafter called plaintiff's exhibit 2, page 5, line 16).

2.  Plaintiff was qualified for the job.  (Plaintiff's exhibit 2, page 5, line 19).

3.   Plaintiff was terminated.  (Plaintiff's exhibit 2, page 5, line 16).

4.  Plaintiff was replaced by a white male, Chris Hines.  (Plaintiff's exhibit 2, page 5, line 23 and page 109, lines 3 6).  Both Young (BM) and Hines (WM) worked as Junior Range Techs (Plaintiff's exhibit 2, page 8, lines 11 - 15).  They both worked under Temple (WM) (crew chief and range tech) and Erickson (WM)  (project manager).  (Plaintiff's exhibit 2, page 26, line 12 - 14).   They performed nearly identical jobs.  (Plaintiff's exhibit 2, page 26, line 5 - 11).

5.  Mr. Erickson, (WM) the project manager, had input into the termination of plaintiff (Plaintiff's exhibit 2, page 10, line 9) and Mr. Erickson made the decision to request that

1

Corporate terminate plaintiff. (Plaintiff's exhibit 2, page 10, line 9). Mr. Garrett (WM)made the final decision.

## B. THE COMPANY'S PROFFERED LEGITIMATE BUSINESS REASON FACTS FOR TERMINATION:

6. Mr. Erickson (WM) stated three reasons for his recommendation for the termination of Young. (Plaintiff's exhibit 2, line 11, page 6)

    a. March 15, 2005 one write up was given to Young from Thomas Lavar, the quality control inspector, for not having a preventative maintenance and checks and services sheet [a form] in his vehicle.

    b. The second write-up was because of he left a vehicle in disarray.

    c. The third write-up was that Young did not *account* for supply procedures for the *plastic mannequin targets* in the supply room that he was in charge of: "...The mannequins in the supply room and the mannequins on the card did not match."[1]

7. Mr. Garret, (WM) made the final decision based on Erickson's recommendation and the three write-ups and his (Young) *overall performance history at Honeywell*. (Tab A, Pl. Ex. 1)

## C. THE PLAINTIFF'S REBUTTAL FACTS FOR TERMINATION CASE

8. Mr. Hines (WM) has (2) two written disciplines. (Plaintiff's exhibit 2, page 18, line 21).

    a. He shorted out a "system" in a "bunker"; it was a Cardinal Safety Violation. (Plaintiff's exhibit 2, page 19, line 3; page 23, line 1). This is called a serious violation by Mr. Erickson. (Plaintiff's exhibit 2, page 19, line 11).[2] He was put on probation for one year.

---

    [1] What this means is that there is a sign out card in the supply room and the number of mannequins in the supply room have to match the number written on the card. It doesn't mean that any mannequins are missing and in fact none were. (Plaintiff's exhibit 2, page 36, lines 11 - 19).

    [2] There is dispute within the company as to who is at fault for this discipline: Mr. Erickson (project manager) says that Hines was improperly trained by Mr. Temple (Plaintiff's exhibit 2, page 24, line 20) and Mr. Temple (crew chief supervisor over Hines) says that he *was* properly trained. (Plaintiff's exhibit 1, page 14, line 21 to page 15, line 1). Prior to taking Mr. Young's job, Mr. Hines worked (in part) in the same place called the "bunker" and he was trained by Mr. Temple, the safety representative and the W.A.Q.C. Specialist. (Plaintiff's exhibit 1, page 14, line 21 to page 15, line 1). Furthermore, this is not just a "serious" violation,

(Plaintiff's exhibit 2, line 6).   While he worked in the "bunker" Mr. Hines stuck a screwdriver into a "hot box" and shocked himself.  (Plaintiff's exhibit 1, page16, line 5).  Anyone, trained or untrained, would know not to stick a screwdriver in a "hot box."  (Plaintiff's exhibit 1, page 17, line 15).  Mr. Hines had done this job over and over again as it was a monthly check that is done every month on at least five locations on his side of the range.  (Plaintiff's exhibit 1, page 17, line 18).  This a Serious Safety Violation and the person will be subject to termination regardless of past performance.  (Plaintiff exhibit 4, 2nd para).

b.  Shortly thereafter (four days), there was a pipe that he (Hines) was taking out to the range and it was sticking out the back end of the truck without a flag on the pipe.  (Plaintiff's exhibit 2, page 25, lines 7 - 23).  Hines received another written warning.

c.  In April of 05, he did not take part in any cleaning duties assigned to him.  (Plaintiff's exhibit 5, last sentence).

8.  The company was not fined by the U.S. Army for any of Young's (BM)  disciplines, nor did they cost the company money, nor did they lose any "award" money from the U.S. Army.  (Plaintiff's exhibit 2, page 12, line 2).   The company had to pay $778.00 to repair the "piece", but they charged it to government.  (Plaintiff's exhibit 2, page 20, line 7).  The company was not fined by the U.S. Army, but they lost 2% of their award fee, or, about $1,200.00.  (Plaintiff's exhibit 2, page 20, line 20) because of the Hines incident.

9.  Mr. Erikson (WM) says that Mr. Temple (WM) was at fault for the "shorting out of the bunker" because he did not properly train Hines (WM), Temple was not disciplined.  The Hines incident caused the company to lose $1200.00 .  It  was a violation of the Cardinal Safety Rule, number 2–knowingly placing another person in physical danger.  (Plaintiff's exhibit 4, para 2 and Plaintiff's exhibit 2, page 20, line 20).[3]

10.  Mr. Young's job for the last year and half or two years was to deliver mannequins to the small arms ranges and for that time period his mannequins were always there.  (Plaintiff's exhibit 2, page 32, line 10 - 23).

---

it a especially serious violation, so serious that *past performance is not a consideration in the discipline.*  (Plaintiff's exhibit # 4–middle paragraphs).

[3]  Mr. Erickson admits that he should have written Mr. Temple up.  (Plaintiff's exhibit 2, page 25, line 2).

11.  Mr. Garrett made the final decision to terminate Mr. Young based on the recommendation to terminate Young made by Mr. Kenneth Erickson and the "overall employment history" of Young.  (Defendant's Tab A, plaintiff's exhibit 1).

12.  Failure to lock-out while conducting a preventive maintenance check and service is a violation of a cardinal safety rule.  (Plaintiff's exhibit 4, paragraph 3).
See also the Discipline Policy, plaintiff exhibit #3

## ARGUMENT IN TERMINATION CASE

### D.  DEFENDANT'S REASONS FOR TERMINATION ARE A PRETEXT FOR DISCRIMINATION

Defendant has briefed a lot of things about plaintiff regarding his work history both before and during his tenure with Honeywell.  But, the only relevant work history regarding his termination are the facts before the decision-makers–Erickson and Garrett at the time of the decision.  EEOC v. Sears Roebuck & Co., 243 F.3d 846 (4th Cir. 2001), stating that s factfinder could infer from the late appearance of the employer's current justification that it is a post-hoc rationale, not a legitimate explanation for its business decision not to hire the employee.  Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 567 (1981), disparate treatment potentially results from discretionary decision to fire an individual who was said not to get along with co-workers.

This is what was before Garrett in his termination letter sent to Young in **March of 2006.** (Tab A, Pl. Ex. 1).  He said, he terminated Young based on the (3) written warnings [sent to him by Erickson] and his *overall performance history at Honeywell.*   Mr. Garrett does not state in that letter exactly what he means by *overall performance history at Honeywell.*

### E.  "OVERALL PERFORMANCE HISTORY AT HONEYWELL" AS A STATED REASON FOR TERMINATION

*Overall performance history* at Honeywell is a subjective reason, because, it would by

4

definition include, all performance records, good and bad performance items and issues and the decision-makers' interpretation of those records.

IMPACT v. Firestone, 893 F.2d 1189 (11th Cir. 1990): the employer must produce admissible evidence indicating that it actually based its employment decision on a reasonably specific, legitimate reason; it is not enough to offer evidence suggesting merely that circumstances existed which would given rise to a legitimate reason for disparate treatment had the employer actually relied upon that reason.

The phrase "overall performance history at Honeywell" is suggestive only.  There is not one word in the phrase to indicate what kind of performance Mr. Garrett is talking about–its wide open to speculation.  Good performance but not good enough?  Great performance but erratic?  Average performance?  It could mean anything.  A civil rights litigant has the right to know the reason he is being terminated so that he can defend himself.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981):  although the 2nd prong burden is not onerous, neither is it a mere formality.  Burdine, 450 U.S. 255: The defendant may not satisfy its burden by presenting a hypothetical reason for the employment decision in question.  Trotter v. Board of Trustees of Univ. Of Ala., 91 F.3d 1449, 1455 (11th Cir. 1996): the defendant must clearly set forth, through the introduction of admissible evidence, the reason for its adverse employment decision, and that reason must be legally sufficient to justify a judgment for the defendant.

**F.  THE SUBJECTIVE REASON "OVERALL PERFORMANCE HISTORY AT HONEYWELL" IS NOT FOUNDED ON A CLEAR AND REASONABLY FACTUAL BASIS.**

In Chapman v. AI Transport, 229 F.3d 1012 (11th Cir. 2000) the court says that a subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant "articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.  This the defendant in brief attempts to do one year after the letter is written.  According to James Garrett [in his affidavit (Defendant's exhibit 24, part 24) made out and signed April 10, 2007], he articulates the specific factual basis upon which he bases the above reason:

Paragraph 10.  "...*At that time*,[4] I reviewed Mr. Young's entire file in my possession[5] and

---

[4] The only facts that can be looked at are the ones that Mr. Garrett had at the time of the termination.

[5] There are actually *two* files on Mr. Young (Plaintiff's exhibit 1, page 7 and 10, lines 13 page 7 to line 17, page 10).  This second file is a drop-file kept by Mr. Temple and Mr. Erickson that has personnel information in it on all of Temple's subordinates, including Mr. Young as well as Mr. Hines, and it is called the Performance and Development Summary.  A government contractor comes under the Privacy Act.  Under the Privacy Act, all personnel files must be kept in a recognized system of records.  Code of Federal Regulations, 45CFR5b.13, requires all federal employees–including government contractors to be aware of their responsibilities under the Privacy Act, including, but not limited to, properly maintaining files, distributing files and allowing access to ones files.  The Privacy Act requires the federal employee to maintain records only in system of records properly published in Federal Register...5 U.S.C. 552a(e)(4).  This drop-file was not kept in a system of records.  *BUT*, there is nothing wrong with that *per se.*  A supervisor can use informal files on subordinates for his own personal use, ie, refresh his recollection for evaluations, which is what Temple says he created the files for.  (Plaintiff's exhibit 1, page 8).  These are known as private records and do not come under the Privacy Act. *However*, some of these "private notes" ended up in Young's Official Personnel File (Plaintiff's exhibit 6, Bhate 103).  Under Chapman v. NASA, 682 F.2d 526 (5th Cir. 1982), the court said that private notes may "evanesce" into official records subject to the Act *when they are used* to make a decision on the individual's employment status (well after the evaluation period for which they are compiled...).  That's exactly what Honeywell did.  It is a violation of the Privacy Act to maintain a "record" outside of the system of records: an employee has a right to review the records in his personnel file, especially to determine that they are legitimate.

determined that he had a (1) history of disciplines on basic Honeywell and Army policies.

Further, (2) the types of violations by Mr. Young were simple site policies that could have

harmed[6] our relationship with the Army, and (3) Mr. Young did not appear to be improving his

performance.

## G.  GARRETT ADDS  REASONS FOR TERMINATION ONE YEAR LATER IN AFFIDAVIT

Chapman did not mean that the defendant could come back one year later and articulate

its foundation facts.   In Hernandez v. Hughes Missile Systems Co., 362 F.3d 564 (9th Cir. 2004),

denying summary judgment and noting that the defendant's "first mention of its purported

'unwritten policy' of uniformly refusing to re-hire individuals previously fired for misconduct

occurred after EEOC conciliation efforts had terminated; EEOC v. Sears Roebuck & Co., 243

F.3d 846 (4rh Cir. 2001), stating that s factfinder could infer from the late appearance of the

employer's current justification that it is a post-hoc rationale, not a legitimate explanation for its

business decision not to hire the employee; Tyler v. FRE/MAX Mountain States, Inc., 232 F.3d

808, 813 (10th Cir. 2000), stating that "we are disquieted...by an employer who fully articulates it

reasons for the first time months after the decision was made.

## H.  NEW REASONS ARE UNWORTHY OF BELIEF

In Batey v. Stone, 24 F. 3d 1330 (11th Cir. 1994),  the court ruled that disbelief that

merging a directorship with the job of the male instead of merging  it with  the  female's job--in

---

[6] One of the reasons Young was fired was for the harm in their relationship with the
Army that he  "might" cause in the future; yet, Hines *actually* caused $1200.00 worth or harm
and wasn't terminated.  Thus, this reason given is too vague to amount to a proper basis under
*Chapman*.

essence--promoting the male over the female, was because of a sex-neutral policy, together with her prima facie case, would satisfy the burden of showing intentional discrimination.

_____In Howard v. BP Oil Co., 32 F. 3d 520 (11th Cir. 1994), the court ruled their was enough evidence to disbelieve the reasons given by the employer and under that circumstance, along with the prima facie case, the case would then go to the jury.

**NEW REASON #1: A history of disciplines**

From the personnel file of Young, here are the disciplines:

WRITTEN DISCIPLINES

1. The three mentioned above are the only disciplines made according to the written discipline policy–See Plaintiff's exhibit which state precisely how disciplines are supposed to be processed.

OTHER "PERFORMANCE" DOCUMENTS ARE NOT DISCIPLINES UNDER THE DISCIPL9INE POLICY

1. One Report of Incident/Accident, property damage to truck. (Plaintiff's exhibit 7). This is not a discipline under the discipline policy. (Plaintiff's exhibit 3, page bhate 1602, IV, para 1).

2. Two "updates" from Jerry Temple's and Ken Erickson's private record, which should not have been put into the personnel file of Curley Young because of Young's rights under the Privacy Act. (Plaintiff's exhibit 8). This is not a written warning under the discipline policy. (Plaintiff's exhibit 3, page bhate 1602, IV, para 1). This is not an oral warning. (Plaintiff's exhibit 3, page bhate 1602, IV, para 2). According to Mr. Temple, it is not a discipline at all. (Plaintiff's exhibit 1, page 7, line 21). They were for end of the year evaluations and merit increases.

3. One developmental counseling form from 2003. (Plaintiff's exhibit 9). This is not a discipline, written or oral. (Plaintiff's exhibit 3, page bhate 1602, IV, para 1 and 2).

4. One plan of Action form after counseling, dated 2003. (Plaintiff's exhibit 10). Not a discipline. (Plaintiff's exhibit 3, page bhate 1602, IV, para 1 and 2).

5. One incident report dated Sep. 2000, where it was reported that Young *may* have been sleeping on the job. (Plaintiff's exhibit 11). Not a discipline. (Plaintiff's exhibit 3, page bhate 1602, IV, para 1 and 2).

6. One memo dated March 3, 2000, regarding a discrepancy in completion of vehicle daily check sheet. (Plaintiff's 12). Not a discipline. (Plaintiff's exhibit 3, page bhate 1602, IV, para 1 and 2).

7. A memo by Mr. Temple for being 4 minutes late. (Plaintiff's 13). Not a discipline. (Plaintiff's exhibit 3, page bhate 1602, IV, para 1 and 2).

None of the seven (7) performance related documents are disciplines under the written discipline policy.

Thus, according to Mr. Garrett, the (3) written disciplines, plus the (7) other related performance documents, which were not discipline under the written disciplinary policy, provided him with the view that plaintiff's overall performance history at Honeywell was bad.

Busby v. City of Orlando, 931 F. 2d 764 (11th Cir. 1991): the failure to use their *step policy* is evidence that the defendant never intended to use the it. Bell v. Birmingham Linen Service, etc., 715 F.2d 1552 (11th Cir. 1983): the circuit court sent back the case for further consideration of the evidence that the court needed to consider in ruling on employer's proffered legitimate business reasons "...In making this finding, the district court should consider, inter

9

alia, "...the failure, if any, of BLS, to follow objective standards in making its employment decision... Harris v. Birmingham, Board of Education, 712 F.2d 1377 at 1382 (11th Cir. 1983); Watson v. National Linen Service, 686 F. 2d 877 (11th Cir. 1982)...".  Here, Garrett talks about "overall performance history"without any indication of exactly what he means.  Was he looking at the 7 performance documents?  If so, how were they viewed by Mr. Garrett?  What exactly are they?  They do not exist in the written discipline policy, plaintiff's exhibit #3.

In Desert Palace, Inc., v. Costa, 539 U.S. 123 (2003),a mixed motive case, the plaintiff sued because she was (1) stalked by her supervisor, (2) received harsher discipline than men, (2) she was treated less favorably than men in the assignment of overtime, and (4) supervisors stacked her disciplinary record and used or tolerated sex-based slurs against her, and (5) she was terminated.  The case went to a jury and she won.

Here, plaintiff can show that his personnel file was stacked because two documents were meant to be private documents (Plaintiff's exhibit 6 - 8) and others are simply without definition.

## I.  NEW REASONS #2:  simple site policy violations  that could have harmed our relationship with the Army

Burdine, 450 U.S. 255: The defendant may not satisfy its burden by presenting a hypothetical reason for the employment decision in question.  See also, IMPACT v. Firestone, 893 F.2d 1189 (11th Cir. 1990), as summarized above.

This is also inconsistent with what happened in the HInes situation;  Mr. Hines actually harmed the relationship with the Army by losing the company  a $1200 Army Award and who was not terminated.  See Busby v. City of Orlando, 931 F.2d 764 (1991), which states that any

part of the disciplinary system that is false can taint the whole process. Here, defendant wants us to believe that "simple" site policy violations that "could" harm the relationship with the Army is equivalent to a Cardinal Safety Violation. Hines is not fired for a Cardinal Safety Violation, but, plainitff "could" harm the relationship with the Army.

**J. NEW REASON #3: did not appear to be improving his performance**

In IMPACT v. Firestone, 893 F.2d 1189 (11th Cir. 1990): the statement by the personnel director...that it was the *general practice* of the department to select the best qualified (applicant) would not satisfy the requirements of the employer's burden to produce evidence articulating a legitimate non-discriminatory reason for the challenged employment action. The reason given is subject to the interpretation that while most of the time we give the job to the most qualified person, some of the times we give the job to this less qualified person for unlawful reasons.

Did Young's performance improve or not? To say that something "appears" one way, also means, that it may not appear that way in another way. Furthermore, Mr. Garrett does not address the evaluations of Mr. Young, nor, does he address his awards. How much is Mr. Young supposed to approve over a "meets standard" evaluation history which is about the same as Mr. Temple? And if so, why does Mr. Young have to outperform Mr. Temple in order to show the improvement that Mr. Garrett speaks? That is the problem with using vague reasons. They are subject to an infinite number of inference and that is why they not permitted as a matter of law.

Here is why the statement is vague:

1. PLAINTIFF'S ACHIEVEMENT AWARDS (Plaintiff's exhibit 14).[7]

---

[7] Erickson has 0 Achievement awards in his personnel file, bhate 0545 to bhate 0583

11

Extraordinary effort and personal commitment award for 2nd quarter, 2001

Outstanding safety performance, 1st quarter of 2004.

Letter of Appreciation for Young's "...relentless pursuant of excellence."   (Plaintiff's exhibit

15).

Reward and Recognition Program award Order Form–no date

Merit Award - 2002

While the court does not sit as a super-personnel department, *Chapman* cautions us that

subjective phrases like "did not appear to be improving his performance" must be supported by

the evidence.  Plaintiff's achievement awards do not support new reason #3.

Below is a comparison of plaintiff's evaluations and Jerry Temple's evaluation (Jerry

Temple is the crew chief, but he also performs range work the same a plaintiff).  As can be seen,

these evaluations are virtually identical over the history of their employment over the

approximate same time frame, for the years in which evaluations were provided.

PLAINTIFF'S EVALUATIONS (these are either the dates of the evaluation or the year of the
evaluation).  (Plaintiff's exhibit 15).

1997 - was evaluated good or satisfactory in all areas.

1999 - was evaluated exceeds standard or at standard in all areas except for "business acumen"
where he received a needs development.

2000 - was evaluated exceeds standard or standard in all areas, except (3) areas, where he
received a needs improvement in business acumen, developing people, and technical skills.

 However, he received exceeds standards in the areas of commitment, teamwork and innovation.
2002 - was evaluated exceeds standard or standard in all categories.

2003 - was evaluated exceeds standard or standard in all categories, except
"Global Mindset" where he received a needs improvement.

2004 - was evaluated as At Honeywell Standard in all areas.

12

JERRY TEMPLE'S EVALUATION (these are either the dates of the evaluation or the year of the evaluation).  (Plaintiff's exhibit 16).

1998 - was evaluated exceeds standard or standard in all areas, except needs improvement in "business acumen", "commitment", "electronic technical skill."

1999 - was evaluated exceeds standard or standard in all areas, except needs improvement in "business acumen" and "technical".

2000 - was evaluated exceeds standard or standard in all areas, except received a needs improvement in "customer focus", "Bias for Action", and "Technical skills".

2001 - was evaluated exceeds standard or standard in all areas, except received a needs improvement in "Bias for Action" and "Technical".

2003 - was evaluated exceeds standard or standard, except a needs improvement in "effective communicator"

2006 - was evaluated exceeds standard or standard, except a needs improvement in "business Acumen" and "Innovation".

As can be seen, historically, plaintiff's evacuations are about the same as his immediate supervisor, Jerry Temple.  This does not support Mr. Garrett's #3 reason.

## K.  DISCIPLINARY POLICY

Hines was put on probation for one year on June 22, 2005 for the lock-out policy violation while he was conducting preventative maintenance, as described above.  (Plaintiff's exhibit 2, page 23, lines 6 - 9).  See also,  Tab N, Under Seal.

Then on June 27, he was written up for another "serious" violation.  (Tab N, Under Seal), as described above in plaintiff's facts #7.

According to the Discipline Policy, plaintiff exhibit #3, Chris Hines should have been terminated for getting himself shocked during the first violation.

On page 2 of the disciplinary policy (bhate 1603), under immediate discharge, it states that some violations "...will prompt immediate discharge...".  That is what it says.  And, under this heading of immediate discharge, on page 3, paragraph 10, it says: "...or neglect of safety

regulations or procedures contained in standard internal operating practices, cardinal safety rules, and procedure manuals, where the violation or neglect had the potential to cause physical injury or harm to personnel or property."

Mr. Hines was injured (and according to Tab N he could have died) and over $700 in property was damaged.  Mr. Hines did violate a safety regulation–he failed to lock-out, a violation of a *cardinal safety rule* located in just about every internal operating manual in the world, including Honeywell's.

But Mr. Hines was not discharged.  Instead, he was put on "probation." for one year.  See Tab N, bottom of page.

But then, 4 days later, he again should have been discharged under the policy.

According to Tab N, there was a second violation, a serious one, within the one year period.  Under the policy, (bhate 1604), Section B–Written Warning, Followed by Discharge, an employee that commit a safety rule violation or safe operations procedure, will be fired after a writing warning on the same matter.

Plaintiff was warned in writing for a serious safety violation on June 22, 2005 and this written warning was to remain in his file for one year.  Then, (4) days later he receives another "serious" written warning for a safety violation.

But, he was not terminated.

And this was a Cardinal Safety Rule that Hines violated.  (Plaintiff's exhibit 4, paragraph 3).  According to defendant–see page 17 of the brief, last paragraph, the plaintiff was terminated "in conformance with Honeywell's existing disciplinary procedures for 2005 and 2006.  (Tab A, Ex. 23).  Under the exact same policy, for 2005, Mr. Hines was not disciplined per policy rules.

14

Instead, he received preferential treatment.   Look at what they told plaintiff in March of 2005, "he was written-up and placed on one year's probation with the warning that he could be terminated for a second violation of policy, even though, this March 15 violation was *not* a cardinal safety rule.   (See plaintiff's exhibit 4 for the list of termination violation *regardless of past performance*) and although Mr. Hines' violation was a cardinal safety rule, and he was put on probation, he was not terminated for another safety violation done within *(4) days*.

And Mr. Temple, WM crew chief, whom Mr. Erickson, WM,  blames for not properly training WM Hines in lock-out procedure, was not disciplined at all.  (Plaintiff's exhibit 2, page 25, 1 - 3).

Throughout Mr. Erickson's deposition, he refers to Young's violations as "serious" but none of them were violations of a *cardinal safety rule*.   Yet, Hines was a violation of a "cardinal" safety rule, which Erickson called "serious" when in fact, according to the written rule itself, it was an *extremely serious* violation.   And the other, the flag violation,  Erickson referred to it a "minor" (Plaintiff's exhibit, page 26, line 4), but even the actual write-up said it was a "serious" incident and that his location had already had (3) OSHA recordable accidents in 2005, which made it even more serious.    Once again, Mr. Hines gets preferential treatment.

As stated above, Mr. Young is written up (write-up #3) because the inventory card and the number of mannequins in the supply room do not match by (2).   According to Mr. Erickson, this was a "serious" offense because Honeywell had a history of accountability problems from other people: "...The problem was keeping up with accountability of all the items: The cards, not only mannequins, but cards and target arms.  People would come in the supply room and take them out, and we would spend hours trying to find out where all these parts went that belonged

15

to the government." (Plaintiff's 2, page 33, line 21 to page 34, line 5). Yet, Mr. Erickson

considered that Hines' violation for not flagging as minor, even though there had been (3) OSHA

accidents in Hines' area in by the first half of 2005. Again, Mr. Hines gets the nod.

## L.  COMPARTORS

Plaintiff states that it can overcome the defendant's summary judgment because the

comparator, Mr. Hines received preferential treatment.

The entire brief so far  has been written to get to this point: to limit this case to the

essential facts, namely, the facts in Mr. Garrett's termination letter and the comparison of how

Young was treated compared to Hines.  .

As stated above, the defendant cannot use hypothetical facts, but must use reasonably

specific, legitimate reasons; it is *not* enough to offer evidence suggesting merely that

circumstances existed which would given rise to a legitimate reason for disparate treatment had

the employer actually relied upon that reason.

The reasons relied upon by this employer are laid out in the termination letter.  They

cannot be bolstered after the fact.  Garrett said "overall performance history."  The defendant is

attempting to come back one year later and state that he meant to say "overall *poor* performance

history."  The defendant cannot do that because that is changing their original termination

reason.  This law makes sense.  Here, Mr. Garrett's affidavit speaks only to the negative things

in Young's file without mentioning the positive things, like, his good performance awards and

his acceptable evaluations.  Thus, the inference is that the affidavit is written to define the

phrase "overall performance history" into "overall poor performance history", but, there is no

16

showing of any thought process, any weighing of the overall performance--good and the bad to give it credibility.

Olmstead v. Zimring, 527 U.S. 581, 119 S. Ct. 2176, 2193 (1999) (Kennedy, J., concurring in the judgment) (characterizing the "normal definition of discrimination" as "differential treatment of similarly situated groups" (emphasis added)); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096 (1981) ("McDonnell Douglas teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally." (emphasis added)); Osram Sylvania, Inc. v. Teamsters Local Union 528.

Here, Young has (3) written violations within about a year, none of which are truly serious. Looking at it at a light most favorable to Young, he was written up for (1) not having a form in his truck; (2) having a dirty truck; (3) his inventory sheet showed a *temporary* shortage of 2 mannequins in the supply shed.

On the other performance documents the defendant did not follow the written policy in their handbook that defines written disciplines and oral disciplines.

Hines, who had (2) written violations was not terminated, even though one of his violations was a Cardinal Safety Violation and he should have been terminated immediately according to the handbook. He cost the company money, which Young did not. There is a dispute between Temple and Erickson on his training. Temple says he was trained. Erickson says he wasn't.

Marian Anderson v. WBMG-42, 99-12796 (11th Cir. June 5, 2001): Anderson v. WGMG-42, 253, F.3d 561, 565 (11th Cir. 2001): Similarly situated employees, in a case involving

disparate disciplines, does not mean the conduct of comparator employees must be the same or nearly identical employees to the disciplined employee. The law only requires "similar" misconduct from the similarly situated employees. Olmstead v. L.C. by Zimring, 527 U.S. 581 (1999).

Alexander v. Fulton County, Gal, 207 F.3d 1303, 1334 (11th Cir. 2000): says that the law does not require nearly identical, but only similarly situated. The law only requires similar misconduct from the similarly situated comparator.

Both Hines and Young performed the same jobs, had the same titles and worked under the same bosses and the same disciplinary handbook. They were similarly situated.

Was the conduct similar? The below cases help answer the question.

Osram Sylvania,k Inc. v. Teamsters Local Union 528, 87 F.3d 12;6;1, 1265 (11th Cir. 1996): Disparate treatment exists when similarly situated workers are treated differently even though they have committed similar acts.

Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989): In order to show discriminatory discipline, plaintiff must show either that he did not violate the work rule or "that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against other persons who engaged in similar misconduct."

McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273 (1976): precise equivalence in culpability between employees is not the ultimate question, and, therefore, has directed the emphasis of the fact fenders inquiry to the question of "comparable seriousness." Evidence of comparator employees involved in acts of comparable seriousness is adequate to

plead an inferential case that the employer's reliance on his discharged employee's misconduct as grounds for terminating him was merely a pretext.

## II.  TERMS AND CONDITIONS

Plaintiff adopts each and every allegation and facts as heretofore set forth.  Plaintiff alleges that the facts set forth make a claim for Terms and Conditions discrimination under the law of Desert Palace, Inc., v. Costa, 539 U.S. 123 (2003), as cited above.

## III.  RETALIATION

Plaintiff adopts each and every allegation and facts as heretofore set forth.  Plaintiff alleges that in Christmas of 2004 he complained to Shawanda Hunt that he had been discriminated against because of his race.   (Defendant's exhibit #1, TAB A, Curley Young depo and plaintiff's exhibit 17 and Garrett's affidavit, para 12).    Plaintiff also complained to Erickson that Calvin Flowers did not score as high on a test for a Junior Range Tech position because the test was racially skewed in 20003 or 2004.   Calvin Flowers had the experience and Mr. Hines did not.  (Defendant's exhibit 1, TAB A, page 169, line 19).  Flowers was qualified for the job through his experience.   (Defendant's exhibit 1, TAB A, page 170, lines 8 - 15).  When Mr. Hines got the job he was not qualified.   (Id. at 173, line 18).  See Gupta v. Florida Board of Regents, 212 F.3d 571 (11th Cir. 2000) on the issue of "good faith" belief.

Wideman v. Wal-Mart Stores, Inc., 141 F.3rd 1453 (11th Cir. 1998), to establish a prima facie case of retaliation under 42 U.S.C. Section 2000e-3(a), a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.  Weaver v. Casa Gallardo, 9022 F.2d 1515, 1524 (11th Cir. 1991).

Plainitff engaged in a statutorily protected expression.  Plaintiff was terminated.  Was there a causal relationship to the protected expression.  Pennington v. City of Huntsville, 261 F.3d 1262 (11th Cir. 2001): the protected activity and the negative employment action are not completely unrelated.

Even though Garrett made the final decision, he was helped in that decision by Erickson.  That means that a person who heard the expression participated in the termiantion.   Olmsted v. Taco Bell Corp., 141 F.3d 1457 (11th Cir. 1998), the court reversed the lower court ruling that there was not causal relationship.  The court found that some of the individuals involved in the making the decision (adverse employment action) were aware of the protected activity and that even though no one person made the decision it was a "consensus decision."

TIME-FRAME

Gupta v. Florida Board of Regents, 212 F.3d 571 (11th Cir. 2000): "the decision-makers were aware of the protected conduct, and that the protected activity and the protected action were not wholly unrelated...close temporal proximity *may be sufficient to show the protected activity and the adverse action were not wholly unrelated*.   "...she complained about the alleged sexual harassment to other faculty members in late 1994 and to Dean White in January 1995.  Gupta was denied a merit raise in the spring of 1996 and then denied a tenure extension in early 1997.  The did not rule on the issue of "time frame" but, instead ruled that her complaints were not "adverse employment"actions.  The court did rule that she would have had a retaliation claim if the "adverse actions" had been strong enough.

Plaintiff that the because he was quickly fired–March 2005 to April of 2006 getting three write-ups in a row–after a long tenure of good evaluations, supplies the causal connection when

compared to Mr. Hines' performance.

## IV. CONCLUSION

Summary judgment should not be granted on the issues addressed in this brief.

/s/ Jeff Bennitt

_____

Jeffrey W. Bennitt ASB N51J
BENOO4

Jeff Bennitt & Associates, LLC,
Suite A-3 4898 Valleydale Rd., Birmingham, Al 35242 (205) 408-7240
fax: (205) 408-9236        e-mail: Bennittlaw@aol.com

CERTIFICATE OF SERVICE

I hereby certify that  a copy of the above was served on the defendant corporation and former counsel by mail/email on 5/21/07.

Hon. Ryan M. Aday
Ogletree, Deakins, Nash
One Federal Place
1819 Fifth Ave North, Suite 1000
Birmingham, Al   35203

/s/ Jeff Bennitt

_____

21

22