IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CURLEY YOUNG,** : | |
| : | |
| Plaintiff, : | |
| : | **CASE NO:** |
| vs. : | |
| : | **1:06-CV-00563-SRW** |
| **HONEYWELL TECHNOLOGY** : | |
| **SOLUTIONS, INC.,** : | |
| : | |
| Defendant. : | |
| _____: | |

**DEFENDANT HONEYWELL TECHNOLOGY SOLUTIONS, INC.'S
REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Honeywell Technology Solutions, Inc. ("Defendant" or "Honeywell") and files its Reply to Plaintiff's Opposition to Motion for Summary Judgment. In support hereof, Honeywell states as follows:

**I.    INTRODUCTION:**

On May 1, 2007, Honeywell filed its Motion for Summary Judgment, its Brief in Support thereof, (the "Summary Judgment Brief") and Evidentiary Submission (collectively referred to as the "Summary Judgment Motion").  On May 21, 2007, Plaintiff filed his Opposition to Honeywell's Motion for Summary Judgment as well as an Evidentiary Submission (collectively referred to as the "Opposition Brief").  In his Opposition Brief, Plaintiff attempts to engineer factual disputes through misguided arguments based on comparison of dissimilar acts and misstatements of facts.  As demonstrated herein, as well as in Honeywell's Summary Judgment Motion, Plaintiff's efforts to create factual disputes are not worthy of credence, and as a result, Honeywell is entitled to summary judgment on all of Plaintiff's claims.

**II.   ARGUMENT:**

    **A.   Plaintiff has Not Opposed Honeywell's Summary Judgment Motion with Respect to his Promotion Claim.**

Plaintiff's Opposition Brief does not oppose Honeywell's Summary Judgment Motion with respect to Plaintiff's failure to promote claim.  In its Summary Judgment Motion, Honeywell set forth arguments and submitted evidence in accordance with Fed. R. Civ. P. 56 with respect to this claim, and Plaintiff has failed to respond, and thus, Honeywell is entitled to summary judgment on this claim. *See* Fed. R. Civ. P. 56(e); *Clark v. Jefferson County Health Dept.*, 2005 U.S. App. LEXIS 10276, *20 (11th Cir. 2005) (holding plaintiff waived argument that district court erred in granting motion for summary judgment by failing to oppose summary judgment in district court).

    **B.   Honeywell is Entitled to Summary Judgment on Plaintiff's Termination Claim because Plaintiff Cannot Show that Honeywell's Legitimate, Nondiscriminatory Reasons for his Termination are Pretextual.**

In his Opposition Brief, Plaintiff argues that Honeywell's legitimate, nondiscriminatory reasons for his termination are pretextual because (1) notwithstanding the voluminous documentary evidence of Plaintiff's policy violations and shortcomings, the phrase "overall performance history" used in Garrett's termination letter to Plaintiff is somehow vague and subjective; (2) that Garrett adds "new" reasons for Plaintiff's termination in his affidavit based on the date he signed his declaration; (3) that Hines was cited for a safety violation which cost Honeywell $1,200, while Plaintiff's violations, allegedly, did not cost Honeywell money, and (4) that Hines was treated more favorably because he was not fired for committing, in Plaintiff's opinion, a "cardinal" safety

violation, and that Hines committed a second safety violation thereafter. *See* Opposition Brief at 4-14. These arguments are without merit, based on Plaintiff's subjective opinion, and contrary to the undisputed evidence submitted, such as Honeywell's Disciplinary Policy and Garrett's Declaration.

Put simply, the use of "overall performance history" in the termination letter is not vague or ambiguous because Plaintiff's work history has been explained and supported by undisputed evidence in Honeywell's Summary Judgment Motion. Honeywell has not relied on this assertion alone as its reason for terminating Plaintiff's employment. Rather, Honeywell has submitted undisputed evidence to further detail Plaintiff's "overall performance history" and has explained his many performance deficiencies in detail in the Summary Judgment Brief. *See* Summary Judgment Brief at 7-20. Plaintiff does not and cannot dispute that he received three disciplinary actions during his one year probationary period, and that he had numerous other performance related problems, such as sleeping on the job, damaging Honeywell property, and failing to comply with Honeywell policy and procedure.

Additionally, Garrett's declaration does not add any "new" reasons for Plaintiff's termination, but rather explains Plaintiff's "overall work history." In the Opposition Brief, Plaintiff attempts to use semantics and word games to differentiate between "disciplines" and "other performance documents." *See* Opposition Brief at 8-10. However, Plaintiff does not dispute the three written disciplinary actions that led to his termination, or his history of poor performance with Honeywell, which includes sleeping on the job, damaging Honeywell property, and failing to comply with Honeywell policy and procedure.

Plaintiff also attempts to show that his alleged comparator, Chris Hines, was treated more favorably because he was not terminated for damaging $1,200 worth of Honeywell property. This argument is disingenuous as Plaintiff fails to mention the fact that he also damaged Honeywell property, a truck, due to his own carelessness, and was not terminated for this action. (Tab A., pp. 141-42, l. 12-23; p. 162, l. 1-7; p. 285, l. 2-4; Ex. 32; Tab G - Declaration of Thomas Lavar ¶ 7).

Plaintiff argues that Hines was treated more favorably because he was not terminated after he slightly injured himself while performing a "lock out, tag out" procedure. In making this argument, Plaintiff misstates Honeywell's Disciplinary Policy and asserts his own subjective opinion that Hines committed a "cardinal" safety violation. Honeywell's Disciplinary Policy states that a "willful" violation or neglect of safety regulations will result in discharge. *See* Exhibit "3" to Plaintiff's Evidentiary Submission. Plaintiff fails to mention the "willful" component, and fails to mention that the policy goes on to state in the following subsection that a "violation of safety rules or safe operations procedure" may result in immediate discharge. *See id.* There is no evidence that Hines "willfully" injured himself - such an argument is illogical. Furthermore, Erickson testified in his deposition that Hines was unfamiliar with the "lock out, tag out" procedure for the particular bunker in question as not all bunkers are wired in the same way. (Tab E, p.19, l. 13-23, p. 20, l. 1). The evidence belies any notion that Hines committed a "willful", or in other words, a "cardinal" safety violation.

Additionally, Plaintiff asserts that Hines received favorable treatment for committing, in Plaintiff's own opinion, a "serious" safety violation when Hines failed to attach a safety flag to a pole that was sticking out of the back end of a truck. Plaintiff's

4

unsupported assertion is directly contrary to Erickson's testimony that this violation was a "minor" violation. (Tab E, p. 25, l. 7-23, p. 26, l. 1-4). Accordingly, the evidence shows that Hines neither committed a "cardinal" safety violation, nor a "serious" safety violation thereafter, and therefore, Honeywell was justified for not terminating him for those violations. Accordingly, even if Hines was a proper comparator, he was not treated more favorably than Plaintiff because he and Hines were both were treated the same with respect to Honeywell's Disciplinary Policy. As a result, Plaintiff's termination was in no way based on his race, and as a result, Honeywell is entitled to summary judgment.[1]

As explained in more detail in the Summary Judgment Motion, in March 2005, Plaintiff was found without his blank and completed PMCS forms, which is a violation of both Army and Honeywell policy and is considered a serious infraction.[2] (Tab A, Ex. 41; Tab E, p. 28, l. 1-5). Plaintiff had been employed by Honeywell for approximately seven years at this time, and was well aware of this basic responsibility. (Tab A, pp. 146-47, l. 11-1). He was written-up and placed on a year's probation with the warning that if he was "counseled for any deviation from . . . established guidelines, policies and procedure" he would be subject to "immediate employment termination." (Tab A, Ex. 41).

Ten months later, Plaintiff committed a gross violation of Honeywell and Army policy when he left a blower full of gas in his government-issued truck along with food wrappers, cans and WD-40 and paint not properly stored in secondary containers, which

---

[1] As set forth in the Summary Judgment Brief, Hines is not a proper comparator to Plaintiff. *See* Brief in Support of Motion for Summary Judgment at 21; *see also* Section II(D) *infra*.

[2] Based on Plaintiff's own rationale, he committed a "cardinal" safety violation by failing to follow proper PMCS procedure. *See* Plaintiff's Exhibit "4", ¶ 3.

was also recorded in photos. (Tab A, Exs. 45-47). This type of violation demonstrated blatant disregard for Honeywell's policies and the government's property and could have caused great harm to both persons and property had the blower exploded or the fumes become too strong. In his Opposition Brief, Plaintiff describes this violation as merely leaving his truck in "disarray" (*see* Opposition Brief at 2), while, in fact, he left his truck in a dangerous condition which could have resulted in injury to himself and others. *See* Photos (Tab A. Ex. 47).

Finally, not two months later, Plaintiff was found in violation of inventory procedures. In March 2006, Clay, the Supply Technician, performed an inventory check and could not account for two missing mannequins on Plaintiff's range. (Tab E, pp. 32-34, l. 22-17; Tab B, ¶ 25). Plaintiff had been warned about this inventory check and about his inventory on many occasions, and worked on inventory accountability in his Six Sigma program. (Tab E, pp. 32-33, l. 22-19; p. 39, l. 3-11; Tab F, p. 19, l. 9-16; Tab B, ¶¶ 25, 26) Given this third violation, Erickson recommended Plaintiff's termination. (Tab E, pp. 11-12, l. 3-1; Tab B, ¶ 27) HR Director Garrett approved the recommendation after a complete review of Plaintiff's file and concluded that Plaintiff's repeated record of the most basic of Honeywell's policies showed little intent to improve. (Tab D, ¶¶ 10, 11)

Importantly, all three of these violations were found and reported by black employees and co-workers of Plaintiff. Lavar found the first and second violation(s), and Clay found the last violation which was confirmed by Lavar. (Tab A, pp. 209-210, l. 23-20; pp. 285-286, l. 23-4; Tab E, pp. 11-12, l. 6-1; Tab G, ¶¶ 1, 3, 8). These violations

were in addition to Plaintiff's history of damaging property, sleeping on the job, tardiness, and insubordination.

Giving further credence to the legitimacy of Plaintiff's termination, the Army commended Honeywell on its decision, and even mentioned it in its quarterly evaluation of Honeywell. (Tab A, Ex. 50; Tab B, ¶ 28) Given Plaintiff's performance, his perception among his co-workers and Army personnel, and the multiple chances he was given to improve, it is obvious that Plaintiff was not terminated due to his race, but due to his repeated poor performance. Plaintiff's Opposition Brief does not show otherwise. As a result, Plaintiff cannot show that his termination was in any way pretextual, and therefore, Honeywell is entitled to summary judgment.

**C.  Plaintiff's Retaliation Claim Fails as a Matter of Law.**

**1.  Plaintiff cannot make a *prima facie* showing of retaliation under 42 U.S.C. Sec. 1981 because (1) Garrett was unaware of Plaintiff's alleged complaints, and (2) Plaintiff cannot show a nexus or causal connection between any alleged protected activity and his termination.**

In an effort to support his retaliatory discharge claim, Plaintiff makes vague assertions that he (1) complained of race discrimination in December 2004 to Hunt in Honeywell's Human Resources Department; and (2) that he complained in either 2003 or 2004 to Erickson that a test for a Junior Range Tech position was "racially skewed", and that a co-worker, Calvin Flowers, was discriminated against in being denied the position. *See* Opposition Brief at 19. Plaintiff does not alleged that he complained to Garrett, the ultimate decision-maker as to Plaintiff's termination, but rather draws the conclusory and unsupported inference that Garrett must have known of the alleged complaints, even though they were allegedly made occurred before Garrett was ever employed with

Honeywell. The evidence shows that Ms. Hunt never spoke with Garrett about Plaintiff during the little time their employment overlapped at Honeywell. *See* Garrett Declaration at ¶ 13. Plaintiff has no evidence to refute this. Plaintiff additionally comes to the unsupported conclusion that Erickson must have told Garrett of Plaintiff's complaint about the Junior Range Tech test being "racially skewed" even though that complaint allegedly occurred years before Garrett was employed with Honeywell. Additionally, Erickson could not have told Garrett about this complaint because Plaintiff never made this complaint to Erickson. (Tab B, ¶ 30). Regardless, Plaintiff has produced no evidence to support such the assumption that Erickson told Garrett of the protected expression. Accordingly, Garrett was completely unaware of Plaintiff's alleged complaints, and as a result, it is impossible for Garrett to have acted with any retaliatory animus toward Plaintiff. Therefore, Plaintiff fails to support a *prima facie* case of retaliation for this reason, in addition to the second reason discussed below.

It is critical to note that Plaintiff was not terminated until May 30, 2006. *See* Termination Letter (Tab A, Pl. Ex. 1). Accordingly, it is undisputed that Plaintiff's latest purported complaint occurred approximately a year and a half prior to his termination, and that his earliest complaint occurred approximately two and a half years prior to his termination. As a matter of law, Plaintiff's alleged complaints and his termination are too remote in time to show any "nexus or causal connection" between the two events.

The Supreme Court in <u>Clark County School District v. Breeden,</u> 532 U.S. 268, 273-74 (2001) has spoken on temporal proximity and causality.

> "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action is sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" <u>Clark County</u>

School District v. Breeden, 532 U.S. 268, 273 (2001) (quoting O'Neal v. Ferguson Constru.Co., 237 F.3d 1248, 1253 (10th Cir. 2001). See e.g. Richmond v. Oneok, Inc., 120 F.3d 205, 209, (10th Cir. 1997) (3-month period insufficient); Hughes v. Derwinksi, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient).

In Maniccia v. Brown, 171 F.3d 1364, 1370 (11th Cir. 1999) the appellate court held that a 15-month delay between the filing of a sexual harassment grievance and a transfer "belied her assertion the former caused the latter." Many other cases hold that remoteness in time between the protected expression and the adverse action destroys any possible nexus between the two events. *See* Summary Judgment Motion at 37, fn. 18. Accordingly, Plaintiff cannot satisfy a *prima facie* case of retaliation, and therefore, Honeywell is entitled to summary judgment.

> **2.   Even if Plaintiff Could Satisfy a *prima facie* Case of Retaliation, Plaintiff has No Evidence to Show that the Reasons for his Termination were Pretext for Retaliation.**

It is important to understand that even if Plaintiff could somehow support a *prima facie* showing of retaliation, Plaintiff has no evidence which would tend to show that Honeywell's legitimate, nondiscriminatory, and well-documented reasons for his termination are pretext for retaliation. As explained in the Summary Judgment Motion, case law recognizes that discipline consistent with a history of similar correction provides a legitimate, non-discriminatory reason in response to an allegation of retaliation. *See* Canitia v. Yellow Freight System, Inc., 903 F.2d 1064 (6th Cir. 1990); Hammond v. George C. Wallace State Community College et. al., 2006 U.S. App. LEXIS 6396, *15 (11th Cir. March 16, 2006) Mahgoub v. Miami Dade Community College, 2006 U.S.App. LEXIS 9291, *8 (11th Cir. April, 13, 2006) (all holding that even if a plaintiff satisfies a

*prima facie* case of retaliation, a plaintiff cannot show pretext where evidence exists as to the plaintiff's history of poor work performance and disciplinary problems).

As explained in greater detail in Honeywell's Summary Judgment Brief, these cases are directly on point. Plaintiff was terminated after being placed on probation for a PMCS violation, being suspended for a week for a serious safety violation and finally, for failing to keep up with his inventory after being warned about the same. (Tab A, Exs. 41, 46, 48, Pl. Ex. 1; Tab B, ¶¶ 21, 23, 25, 27; Tab D, ¶¶ 9, 10, 11). The reasons for his termination were well documented and consistent with Honeywell's policies. The termination was so long overdue that Honeywell's customer, the Army, actually commended Honeywell on the personnel decision. (Tab A, Ex. 50; Tab E, p. 53, l. 12-22; Tab B, ¶ 28). As such, Plaintiff cannot show that his termination was in anyway related to his alleged complaint regarding a test taken by another employee, or his generalized complaint of race discrimination, both of which occurred one and a half to two and a half years before his termination. As such, Plaintiff's retaliation claim fails as a matter of law.

> D. **Plaintiff's "Terms and Conditions" Claim Fails as a Matter of Law because Hines is not a Proper Comparator, and He was not Treated More Favorably than Plaintiff.**

Although somewhat unclear, Plaintiff seems to assert in his Opposition Brief that he is entitled to survive summary judgment on his "terms and conditions" claim because Hines is a proper comparator and was treated more favorably than Plaintiff. Such an assertion contradicts Plaintiff's deposition testimony in which <u>he could not identify anyone</u> who received lesser discipline for the same infractions. (Tab A, p. 296, l. 3-6). Plaintiff's inability to identify anyone who was treated more favorably for engaging in similar conduct dooms his "terms and conditions" claim. <u>See id.</u>; <u>Morrisey v. Health</u>

Care Service Corp., 2004 U.S. Dist. LEXIS 87, *20 (N.D. Ill. 2004) ("Morrisey points to no other potential comparators and so his claim fails because he cannot identify a similarly situated employee outside the protected class who was treated more favorably."); see also Miller v City of Coral Gables, 2000 U.S. Dist. LEXIS 19268, *21-23 (S.D. Fla. 2000) (Plaintiff failed to show an adverse act when she could not provide the names of any male comparators.). Plaintiff cannot now assert in his Opposition Brief that Hines was treated more favorably with respect to discipline. It is undisputed that Hines has never been found without his PMCS forms (Tab E, p. 52, l. 3-7; Tab G, ¶ 11) and that Hines has only been written up twice during his employment with Honeywell. (Tab B, ¶ 16).

Furthermore, the evidence is undisputed that Erickson has written-up white employees for the same infractions committed by Plaintiff, specifically, Culpepper for a PMCS violation and Hines, Culpepper, Debbie Woods and David Husey for safety violations, demonstrating that white employees are treated no differently than Plaintiff. (Tab B, ¶ 24). Erickson has not given a write-up to anyone for inventory violations as no one, other than the Plaintiff, has committed such a violation since the Six Sigma program was put in place, and Plaintiff received a number of verbal warnings regarding this issue before his write-up. (Tab B, ¶ 26) Given that Plaintiff cannot identify a white comparator, his claim must fail as a matter of law.[3]

---

[3] Plaintiff also makes the bare assertion in his Opposition Brief that his "terms and conditions" claim is entitled to survive summary judgment based on the holding in Desert Palace v. Costa, 539 U.S. 123 (2003), without further elaboration. See Opposition Brief at 19. Judge Thompson of the Middle District of Alabama has held that the holding in Desert Palace does not alter the McDonnell Douglas burden-shifting framework. See Rawlinson v. Whitney Nat. Bank, 416 F.Supp.2d 1263, 1268 (M.D. Ala. 2005). As a result, Plaintiff's mere assertion that Desert Palace somehow bolsters Plaintiff's "terms

**III.    CONCLUSION:**

Based on the rationale set forth herein, as well as the arguments and evidence submitted in Honeywell's Summary Judgment Motion, all of Plaintiff's claims fail as a matter of law and Honeywell is entitled to summary judgment. The undisputed evidence shows that Plaintiff was terminated for three disciplinary violations during a one year probationary period, and that Plaintiff had a history of performance problems during his time at Honeywell. Plaintiff cannot show that his race played any role in his termination, that he was treated less favorably than white employees in regard to discipline, or that his termination was in retaliation for having made any complaints about race discrimination.

Respectfully Submitted,

/s/Sandra B. Reiss
Sandra B. Reiss (ASB-3650-S80S)
Ryan M. Aday (ASB-3789-A54A)
**OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203-2118
Telephone: (205) 328-1900
Facsimile: (205) 328-6000
E-mail: sandra.reiss@odnss.com
        ryan.aday@odnss.com
*Counsel for Defendant, Honeywell Technology Solutions, Inc.*

---

and conditions" claim is inapplicable to a summary judgment analysis and should not be considered by this Court.

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 31st day of May, 2007, I filed the foregoing Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment via this Court's CM/ECF , and that an electronic notice and complete copy of the foregoing Reply will be served to Jeffrey W. Bennitt pursuant to this Court's electronic filing service.

 

                /s/Sandra B. Reiss
                Sandra B. Reiss (ASB-3650-S80S)
                Ryan M. Aday (ASB-3789-A54A)
                **OGLETREE, DEAKINS, NASH,**
                  **SMOAK & STEWART, P.C.**
                One Federal Place, Suite 1000
                1819 Fifth Avenue North
                Birmingham, Alabama 35203-2118
                Telephone: (205) 328-1900
                Facsimile: (205) 328-6000
                E-mail: sandra.reiss@odnss.com
                            ryan.aday@odnss.com
                *Counsel for Defendant, Honeywell*
                *Technology Solutions, Inc.*