IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

CURLEY YOUNG,                     )
                                  )
            Plaintiff,            )
                                  )
    v.                            )     CIVIL ACTION NO. 1:06CV563-SRW
                                  )              (WO)
HONEYWELL TECHNOLOGY              )
SOLUTIONS, INC.,                  )
                                  )
            Defendant.            )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Curley Young brings this action against defendant Honeywell Technology

Solutions, Inc., alleging that defendant discriminated against him on the basis of his race in

violation of 42 U.S.C. § 1981: (1) in the terms and conditions of his employment by

disciplining him more severely than white employees; (2) by failing to promote him to the

position for which Robert Hadley was selected; and (3) by terminating his employment.

Further, plaintiff contends that defendant terminated his employment in retaliation for his

complaints of race discrimination.  This action is presently before the court on defendant's

motion for summary judgment (Doc. # 21).  Upon consideration of the motion, the court

concludes that it is due to be granted.

**BACKGROUND**[1]

Defendant Honeywell Technology Solutions, Inc. ("Honeywell") provides contract

---

[1] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff.  <u>Welch v. Celotex Corp.</u>, 951 F.2d 1235, 1237 (11th Cir. 1992).

preventive maintenance and building services to Army gunnery ranges at Fort Rucker, Alabama; these include small arms ranges, where Army personnel shoot at targets from the ground, and aviation ranges, where they shoot at targets from aircraft.  Plaintiff was employed by Honeywell as a Junior Range Tech in 1997.  He was assigned to certain ranges, including aviation ranges, and was responsible for helping with landscaping, maintenance and upkeep at the ranges.  In 2002, Honeywell hired Ken Erickson as the Project Manager, the highest position at its Fort Rucker site.

In April 2006, Erickson recommended to James Garrett, Honeywell's Human Resources Manager, that plaintiff be terminated.  He based his recommendation on three instances in which plaintiff violated Honeywell and Army policies: (1)  on March 3, 2005, plaintiff received a written warning for failure to complete a required preventive maintenance checks and services ("PMCS") form on a government vehicle;[2] (2) on January 26, 2006, plaintiff again received a written warning for failure to follow Honeywell's PMCS policies, this time for having a blower containing a full gas tank inside the cab of his assigned government vehicle, for leaving trash in the cab and bed of the truck, for having paint cans (without a secondary container) in the bed of the truck, and for failing to conduct the required PMCS on the blower;[3] and (3) plaintiff's failure, in March 2006, to maintain a correct

---

[2] Plaintiff was placed on probation for a year because of this violation.  (Erickson dec., ¶ 21).

[3] On this occasion, Garrett suspended plaintiff for one week.  (Garrett dec., ¶ 9).

inventory for his supply area.[4]  Garrett terminated plaintiff's employment on May 30, 2006.

(Erickson dec.; Garrett dec.; Young depo., pp. 68-70; Defendant's Exhibits 1, 41, 45-47 and

Plaintiff's Exhibit 1 to Young depo.; Erickson depo., pp. 11-12).

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the

court the basis for its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions that it believes show an absence of any genuine

issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing

summary judgment "fails to make a showing sufficient to establish the existence of an

element essential to their party's case, and on which their party will bear the burden of proof

at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

Id. at 324.

---

[4] Erickson testified that he had previously counseled plaintiff verbally about failing to complete a "3318 card" when he took target arms from the supply room.  On this occasion, plaintiff had taken two mannequins from supply without completing the required sign out cards, and had placed the mannequins on the machine gun range.  The inventory discrepancy was discovered by Gregory Clay during a monthly 10% inventory check.  (Erickson depo., pp. 29-36).

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## DISCUSSION

### Analytical Framework

The McDonnell Douglas/Burdine[5] framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as

---

[5]    McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

4

here, there is no direct evidence of discrimination.  See  Combs v. Plantation Patterns, 106

F.3d 1519, 1527-28 (11th Cir. 1997).  This analytical framework is also applicable to race

discrimination claims asserted pursuant to 42 U.S.C. § 1981.  Standard v. A.B.E.L. Servs.,

Inc., 161 F.3d 1318, 1330 (11th Cir.1998).  The plaintiff must first make out a *prima facie*

case of discrimination.  Burdine, 450 U.S. at 252-53; Walker v. Mortham, 158 F.3d 1177,

1183 (11th Cir.1998); Combs, 106 F.3d at 1527-28.  "Establishment of the *prima facie* case

in effect creates a presumption that the employer unlawfully discriminated against the

employee.  If the trier of fact believes the plaintiff's evidence, and if the employer is silent

in the face of the presumption, the court must enter judgment for the plaintiff because no

issue of fact remains in the case."  Id. (quoting Burdine, 450 U.S. at 254); Walker, *supra*.

        If the plaintiff establishes a *prima facie* case, the employer has the burden of

producing "legitimate, non-discriminatory reasons for the challenged employment action."

Combs, 106 F.3d at 1528 (citing McDonnell Douglas, 411 U.S. at 802).  "To satisfy this

intermediate burden, the employer need only produce admissible evidence which would

allow the trier of fact rationally to conclude that the employment decision had not been

motivated by discriminatory animus." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S.

at 257).  If the employer articulates a legitimate, nondiscriminatory reason for its decision,

the mandatory inference of discrimination arising from the *prima facie* case is destroyed.

Walker, 158 F.3d at 1184.  The plaintiff must then produce evidence "including the

previously produced evidence establishing the *prima facie* case, sufficient to permit a

reasonable factfinder to conclude that the reasons given by the employer were not the real

reasons for the adverse employment decision." <u>Combs</u>, 106 F.3d at 1528.

Promotion Claim

Plaintiff alleges that he was denied a promotion that was given to Robert Hadley, a less-qualified white male. (Complaint, pp. 2, 7).[6] To establish a *prima facie* case of discrimination with regard to his promotion claim, plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) after plaintiff's rejection, defendant filled the position with a person outside of plaintiff's protected group or continued to seek applicants for the position. <u>Summerlin v. M & H Valve Co.</u>, 167 Fed. Appx. 93, 94-95 (11th Cir. Jan. 17, 2006)(unpublished opinion)(citing <u>Walker v. Mortham</u>, 158 F.3d 1177 (11th Cir. 1998)).

Defendant contends that plaintiff cannot establish the second element of the *prima facie* case because he did not meet the minimum qualifications for the electronic technician position. Defendant further argues that plaintiff cannot demonstrate that its reason for selecting Hadley is pretextual. Defendant has introduced evidence that the position description includes a requirement for "Technical/vocation school graduate or DS/GS military training and experience," and that plaintiff did not meet this requirement. Kenneth Erickson, the manager who selected Hadley, testified that he permitted plaintiff to apply for

---

[6] During his deposition, plaintiff testified regarding the selection of Jerry Temple for the supervisor/electrician job. (Young depo., pp. 168-69). However, he has not amended his complaint to include a promotion claim regarding the position for which Young was selected. Accordingly, the claim is not before the court. (<u>See</u> Complaint, p. 7). Additionally, as defendant argues, such a claim would be untimely. <u>See</u> <u>id.</u>; Temple depo., p. 5 (Temple has held the position for nine years); <u>Price v. M & H Valve Company</u>, 177 Fed. Appx. 1 (11th Cir. 2006)(unpublished opinion)(§ 1981 promotion claim barred by Alabama's two-year personal injury statute of limitations).

the position even though plaintiff did not meet the minimum requirements. Erickson stated that he did so in case no qualified candidates applied for the job and that, if this occurred, he intended to go to the Army to seek a waiver of the requirement for the electronics degree. Erickson testified that he selected Hadley because he scored higher on the interview, had the required education, and had six years of electronics and electricity experience. (Erickson depo., pp. 13-15; Job description (Tab K); Erickson dec. ¶ 18; Hadley personnel file excerpt (Tab L)).

In his response to the summary judgment motion, plaintiff does not address the promotion claim, and does not direct the court to evidence of record that he did, in fact, meet the minimum requirements for the position for which Hadley was selected.[7]   He has not produced evidence that the reasons articulated by Erickson for selecting Hadley are pretextual. Accordingly, defendant is entitled to summary judgment on plaintiff's promotion claim.

<u>Termination Claim</u>

Plaintiff contends that both Erickson and Garrett were decisionmakers with regard to his termination. (<u>See</u> Plaintiff's brief, pp. 1-2, 19-20).  Erickson states that plaintiff "was terminated for his final three violations of basic Honeywell and Army policy." (Erickson

---

[7] On a form recommending Hadley for the position, Erickson noted that Hadley was "Fully qualified; meets all qualifications in job announcement scored 3rd on test." (Hadley personnel record, Tab L).  With regard to plaintiff, Erickson's note is unclear concerning plaintiff's qualification for the position.  He indicated, "Qualified; does not meet educational requirements." (<u>Id</u>.).  Even assuming that this contradictory notation is sufficient to demonstrate minimum qualifications for purposes of plaintiff's *prima facie* case, plaintiff clearly has not introduced evidence sufficient to establish pretext.

dec., ¶ 21).  He testified that he recommended plaintiff's termination because of the PMCS

form violation, the incident in which plaintiff's truck was found "in disarray" and with "a gas

blower full of gas inside the cab of the truck," and the incident in which plaintiff failed to

"account for supply procedures for the mannequins in the supply room that he was in charge

of." (Erickson depo., pp. 11-12).  In the letter notifying plaintiff of his termination, Garrett

– the final decisionmaker – advised plaintiff that he was terminating plaintiff because of the

March 2005 and January 2006 PMCS incidents, the March 2006 accountability incident and

his "overall performance history at Honeywell." (Plaintiff's Exhibit 1 to Young depo.).  In

a declaration filed in support of the present motion, Garrett states that, at the time of the last

incident, Garrett reviewed plaintiff's "entire file in [Garrett's] possession." (Garrett dec.,

¶ 10).  He states that he determined that plaintiff had a "history of disciplines on basic

Honeywell and Army policies," and that "the types of violations by Mr. Young were simple

site policies that could have harmed [Honeywell's] relationship with the Army." (Id.)

Garrett further indicates that plaintiff "did not appear to be improving his performance," that

the inventory write-up "came on the heels of his January 2006 write-up regarding his

government issued truck," and that it appeared to Garrett that plaintiff "was not learning from

the most basic of mistakes." (Id.).

    Defendant argues that it is entitled to summary judgment on plaintiff's termination

claim because plaintiff cannot show that the reasons it has articulated for the termination are

pretextual.  Plaintiff argues that one of the reasons articulated by Garrett – plaintiff's "overall

performance history" – is a subjective reason as to which defendant must articulate a "clear

and reasonably specific factual basis" and that defendant has not done so.  Plaintiff further

argues that Garrett provides "new" reasons for termination in his declaration, and that these

new reasons are unworthy of belief.  The court need not reach plaintiff's argument regarding

the allegedly subjective nature of "overall performance history" or his contention that the

additional explanations set forth in Garrett's declaration constitute "new" reasons which are

"unworthy of belief," because plaintiff has failed to produce evidence sufficient to

demonstrate that the objective reason stated by Garrett in the termination letter is pretextual.

See Chapman v. AI Transport, 229 F.3d 1012, 1028-37  (11th Cir. 2000).[8,9]

The objective reason articulated by both Erickson and Garrett for plaintiff's

termination is the occurrence of the three incidents identified in Garrett's termination letter.

Plaintiff does not argue that the three incidents did not occur.  Rather, he seeks to minimize

---

[8]  In Chapman, the decisionmakers indicated that the plaintiff was not hired for a position because: (1) he had a "lack of 'stability in light of the number of jobs he had held in a short period of time,'" and (2) he had a "poor interview."  229 F.3d at 1028.  While the court determined that plaintiff had failed to establish pretext as to both of the reasons, it affirmed the district court's grant of summary judgment "on two independently adequate bases: [plaintiff's] failure to create a genuine issue of pretext as to the objective reason, and also his failure to create a genuine issue of pretext as to the subjective reason.  Id. at 1037.  Chapman makes clear that, to avoid summary judgment, a plaintiff must produce evidence of pretext as to each reason articulated by the decisionmaker.  Id.

[9]  For the same reason, the court has no occasion to address plaintiff's somewhat vague argument that documents held in Garrett's file in violation of the Privacy Act may not be used to support the employer's articulated reason for its employment decision.  This argument is, in any event, without merit.  See Chambless v. Louisiana-Pacific Corp., 481 F.3d 1345 (11th Cir. 2007)(rejecting plaintiff's argument that employer's justification for not selecting plaintiff for a promotion – that employee had failed to complete sick leave paperwork properly – did not constitute a "legitimate, nondiscriminatory reason" because it violated the FMLA, stating that "[p]roof that [defendant] violated the FMLA is irrelevant to the inquiry into whether [defendant] discriminated against [plaintiff] based on her protected traits.").

their seriousness,[10] and he attempts to demonstrate pretext by comparing his treatment to that of Chris Hines, a white male.

Hines became a Junior Range Tech in 2004, several years after the plaintiff. In June 2005, Erickson gave Hines a written record of counseling for his failure to use proper lockout/tagout procedures, which caused damage to government equipment and injury to Hines. Erickson placed Hines on probation for one year. (Defendant's Exhibit N). Erickson testified that Hines had locked out and tagged out the wrong "box," and then put a screwdriver into a high voltage area, shorting out a system in a bunker. Hines' hand was "reddish," and was bandaged at the dispensary. The equipment repair cost $778, which was charged to the Army, and the incident resulted in the Army's reducing Honeywell's quarterly award fee by approximately $1,200. Erickson indicated that Hines' failure to use the correct procedure was a serious safety violation. (Erickson depo., pp. 19-23, 31-32). A few days after this incident, Hines and another employee took a pipe to the range with the pipe extending from the back of the truck. Hines received a write-up from Jerry Temple, his crew chief, for failing to flag the end of the protruding pipe. Temple indicated that this was a "serious" incident; Erickson testified that he considered it a "minor offense." Temple noted, at the end of the letter, that "[t]his written warning will be held in your files, however this is not a written warning from the Program Manager or stronger penalties could apply."

---

[10] See e.g., Plaintiff's brief, p. 17 ("Here, Young has (3) written violations within about a year, none of which are truly serious. Looking at it at a light most favorable to Young, he was written up for (1) not having a form in his truck; (2) having a dirty truck; (3) his inventory sheet showed a *temporary* shortage of 2 mannequins in the supply shed.").

According to Erickson, the Program Manager, a write-up from an immediate supervisor is "not as severe."  Hines has no other write-ups.  (Defendant's Exhibit N; Erickson depo., pp. 25-26; Erickson dec. ¶ 16).

The court concludes that Hines is not an adequate comparator for purposes of the pretext analysis.

> A comparator is an employee "similarly situated [to the plaintiff] 'in all relevant respects.' " Wilson [v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004)] (quoting Holifield [v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)]. The " 'quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" Burke-Fowler [v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006)(quoting Maniccia [v. Brown, 171 F.3d 1364,1368 (11th Cir. 1999))(citation omitted). Misconduct merely "similar" to the misconduct of the disciplined plaintiff is insufficient. Id. at n. 2.

Rioux v. City of Atlanta, ___ F.3d ____,  2008 WL 710441, *9 (11th Cir. Mar. 18, 2008). Plaintiff was terminated for three disciplinary write-ups; Hines had only two.  Additionally, plaintiff's third incident – the inventory accountability issue with the mannequins – is distinctly different in character from Hines' misconduct.

Erickson testified that in Honeywell's "Six Sigma" program, employees study a particular issue and devise a better practice.  Honeywell was experiencing problems with poor inventory control, and was not accounting for all of its inventory in supply closets. Plaintiff participated in the Six Sigma program on this issue, and "worked on procedures to better account for inventory including the use of a 3318 form to denote pulling objects from the supply rooms."  Erickson recommended plaintiff's termination after plaintiff was found

to have two mannequins missing from his supply area which were not noted on a form 3318, "the very practice Mr. Young had devised in his Six Sigma program." (Erickson dec., ¶¶ 20, 25-27). Hines has no similar violation in his disciplinary history. Thus, neither the "quantity" nor the "quality" of Hines' misconduct is "nearly identical" to that of the plaintiff. Plaintiff's evidence does not demonstrate that a similarly situated comparator was treated more leniently than plaintiff. Under these circumstances, defendant's failure to terminate Hines' employment does not establish that its objective reason for firing plaintiff – the three disciplinary incidents – is pretextual. Thus, defendant is entitled to summary judgment on plaintiff's termination claim.

<u>Terms and Conditions Claim</u>

Plaintiff alleges that he "was treated differently in the terms and conditions of his employment in that the other white employees who broke the same alleged rule(s) were either not disciplined at all or were given lesser disciplines." He further asserts that he was "put under surveillance and heightened scrutiny and other white employees were not." (Complaint, p. 6). Defendant argues that plaintiff cannot establish a *prima facie* case of disparate treatment as to the terms and conditions of his employment as he cannot demonstrate that any similarly situated employees outside of his classification were treated more favorably – specifically, that he cannot identify anyone who was given less harsh discipline for the same infractions or who was subjected to less scrutiny than plaintiff.

When asked during his deposition to name someone who was given lesser discipline for something for which plaintiff was disciplined, plaintiff responded that he could not recall.

12

(Young depo., p. 296).  He now offers Hines as the comparator for his terms and conditions claim.

Plaintiff argues that defendant failed to follow its disciplinary procedure with Hines. Plaintiff contends that Hines' first write-up concerned a "cardinal safety violation," and that he should have been fired for this first incident.  Plaintiff further contends that, since Hines was on probation, he should have been fired for having a second violation within four days. According to defendant's policies, it is a violation of "cardinal safety rules" for an employee to "[c]onduct Preventive Maintenance Checks and Services (PMCS) on equipment without following proper check sheet forms, Lockout/Tagout procedures, and posting inspection failures to HTSI's database for proper supply turn-in."  (Plaintiff's Exhibit 4, ¶ 3).  Plaintiff's March 3, 2005 written warning was for his failure to complete a required PMCS form on a government vehicle; Hines' warning was for failing to use proper lockout/tagout procedures. Thus, under the terms of the "cardinal safety rules," both plaintiff and Hines were subject to "termination from the Plant regardless of previous performance."  (Plaintiff's Exhibit 4). Neither plaintiff nor Hines were terminated; both were given written warnings and placed on probation for one year.  (Erickson dec., ¶ 21; Defendant's Exhibit N).  Additionally, neither plaintiff nor Hines were terminated – although they could have been – when each received a second write-up while on probation.  On April 16, 2005, both plaintiff and Hines failed to take part in cleaning duties assigned to them.  (Plaintiff's Exhibit 5; Defendant's Exhibit 43 to Young depo.).  There is no evidence before the court to indicate that either was

disciplined for this failure.[11]

Plaintiff cites defendant's disciplinary policy, which lists, "among those actions which will prompt immediate discharge if the incident occurs in such a manner as to involve the employer or its customers," the "[w]illful violation or neglect of safety regulations or procedures contained in standard internal operating practices, cardinal safety rules, and procedure manuals, where the violation or neglect had the potential to cause physical injury or harm to personnel or property." He argues that, according to this policy, "Chris Hines should have been terminated for getting himself shocked during the first violation." (Plaintiff's brief, p. 13, citing Plaintiff's Exhibit 3). Plaintiff's argument, essentially, is that Hines should have been disciplined more harshly than he was. Even if this is so,[12] it does not establish a *prima facie* case of disparate treatment as to discipline. Plaintiff is required to show that someone outside his protected classification engaged in the same or nearly identical misconduct and received less severe discipline. He has not done so.[13]

---

[11] Plaintiff raises this failure on Hines' part in summarizing Hines' disciplinary history, apparently to bolster his argument that he and Hines are similarly situated. However, plaintiff points to no evidence that Hines was disciplined. (Plaintiff's brief, p. 3). Since defendant noted the same failure on plaintiff's part, and plaintiff likewise was not disciplined, Hines' conduct regarding his assigned cleaning duties in April 2005 does not establish disparate treatment.

[12] As defendant argues, the immediate termination policy appears to apply when either the violation or neglect of safety regulations was "willful." Plaintiff reads the policy to apply in cases of "willful violation" or simple neglect of such policies. The court need not address this dispute regarding interpretation of the policy because, in either event, plaintiff has not established a *prima facie* case of discriminatory discipline.

[13] Honeywell's disciplinary policy also states, "Importantly, while this policy sets forth recommended disciplinary actions, the actual discipline imposed may vary based on the facts and circumstances of a particular situation, in the sole discretion of management." (Plaintiff's Exhibit
(continued...)

14

Additionally, defendant argues that plaintiff cannot identify a similarly-situated employee outside plaintiff's protected class who was subject to less scrutiny. Erickson testified by declaration that he performed inspections on all Range Techs during periodic spot checks, and that he did not check on or watch Mr. Young more than any other Ranch Tech. (Erickson dec., ¶ 12). Plaintiff does not respond to defendant's argument or evidence regarding heightened scrutiny, and has pointed the court to no evidence of record demonstrating that employees outside his classification were not subjected to the same level of scrutiny as plaintiff. Accordingly, defendant is entitled to summary judgment on plaintiff's terms and conditions claim.

Retaliation Claim

Plaintiff alleges that, about two and a half to three years before his termination, he complained to Jerry Temple and Ken Erickson on behalf of Calvin Flowers, a black male, that Flowers had been discriminated against because of his race when he was not selected for

---

[13](...continued)

3, p. 1). Absent evidence that plaintiff was disciplined more harshly than Hines for the same or a similar offense, defendant's leniency (in plaintiff's view) toward Hines does not permit an inference of discrimination. Plaintiff's argument merely invites the court to "second-guess the business judgment" of Honeywell that Hines' first offense did not warrant discharge, even if it cost the employer money and resulted in injury to Hines. This is not the court's role. See Combs, 106 F.3d at 1543 ("[f]ederal courts do not sit to second-guess the business judgment of employers"); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

a promotion. (Complaint, pp. 2-3, 7).[14] He claims that, after his complaint, defendant "began a campaign of retaliation against him by looking for ways to have him terminated." (Id., p. 7).

Race-based retaliation claims are cognizable under § 1981. Batch v. Jefferson County Child Development Council, 183 Fed. Appx. 861, 862 (11th Cir. Jun. 7, 2006)(unpublished opinion)(citing Andrews v. Lakeshore Rehabilitation Hospital, 140 F.3d 1405 (11th Cir. 1998)). To establish a *prima facie* case of retaliation, plaintiff must show that (1) he engaged in protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Id. Defendant argues that plaintiff cannot prove the third element of his *prima facie* case – *i.e.*, that the adverse action was causally related to the protected expression – because: (1) he cannot show that Garrett, the decisionmaker, was aware of plaintiff's complaint of discrimination regarding Flowers; and (2) he cannot demonstrate temporal proximity between the protected expression and the termination. Plaintiff responds that he need not show that Garrett was aware of the expression because he made the complaint to Erickson, who participated in the termination. He further argues that the temporal proximity between his complaint and the three write-ups

---

[14]  In his responsive brief, plaintiff argues (and cites evidence that) he complained to Shawanda Hunt in Human Resources that he had been subjected to racial discrimination. (Plaintiff's brief, p. 19).  However, he included no such allegation in his complaint.  (See Complaint). Accordingly, there is no claim before the court that plaintiff was retaliated against on the basis of his complaint of discrimination to Hunt.  In any event, plaintiff has produced no evidence to rebut defendant's evidence (Garrett dec., ¶ 12) that Garrett – the decisionmaker – was unaware of plaintiff's complaint to Hunt, nor has he pointed to evidence that Hunt was involved in any adverse action taken against plaintiff.

leading to his termination is sufficient to establish causation.

Plaintiff argues that he complained to Erickson in 2003 or 2004 that Flowers did not score as high on a test for the Junior Range Tech position because the test was "racially skewed." (Plaintiff's brief, p. 19; <u>see</u> Young depo., pp. 171-76; Erickson dec., ¶ 30 (Flowers applied in 2004 for the Junior Range Tech position for which Hines was selected)). He contends that, "after a long tenure of good evaluations," plaintiff thereafter received "three write-ups in a row" between March 2005 and April 2006. (Plaintiff's brief, p. 20). As noted above, the first of these three write-ups occurred on March 3, 2005 when plaintiff received a written warning for failure to complete a required preventive maintenance checks and services ("PMCS") form on a government vehicle. (Defendant's Exhibit 41 to Young depo.). The second occurred almost eleven months later, on January 26, 2006, when plaintiff again received a written warning for failure to follow Honeywell's PMCS policies. (Exhibit 46 to Young depo.; <u>see also</u> Exhibits 45 and 47 to Young depo.). After a supply technician reported on April 3, 2006 that plaintiff's inventory was not correct, Erickson recommended to Jim Garrett that plaintiff be terminated. (Erickson dec., ¶¶ 25-27). Garrett terminated plaintiff's employment on May 30, 2006. (Exhibit 1 to Young depo.; Garrett dec., ¶¶ 10-11).

Plaintiff does not argue that his retaliation claim is supported by direct evidence of retaliatory intent, and the court has found no such evidence in the record. Defendant contends that plaintiff cannot establish causation because, *inter alia*, Garrett was unaware of plaintiff's complaint regarding Flowers. However, the court does not read plaintiff's claim to be only that the actual termination decision was retaliatory. Rather, the court understands

the claim to be that, after plaintiff's complaint to Erickson regarding discriminatory treatment of Flowers, defendant – through Erickson – retaliated against him by commencing disciplinary actions against him which ultimately resulted in his termination.[15] Plaintiff could potentially prevail on such a claim without proof of Garrett's actual knowledge of his complaint of discrimination. See Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999)(discussing "cat's paw" theory of causation).  However – assuming that plaintiff could establish that Garrett merely "rubber-stamped" Erickson's recommendation (as would be required under the "cat's paw" theory) – plaintiff must have evidence beyond Erickson's knowledge of plaintiff's complaint of discrimination to prove that the subsequent disciplinary actions were caused by retaliatory animus.  He has pointed to no evidence of causation except for "temporal proximity." Defendant contends that the period of time between plaintiff's complaint of discrimination and the adverse employment action is too lengthy to permit an inference of causation.

Plaintiff has not directed the court to evidence of the month of his complaint to Erickson; he argues that he complained to Erickson in 2003 or 2004. (Plaintiff's brief, p. 19). Erickon testifies by declaration that Flowers applied in 2004 for the Junior Range Tech position for which Hines was selected. (Erickson dec., ¶ 30).  Giving plaintiff the benefit of

---

[15] Defendant also argues – citing Erickson's declaration – that plaintiff never complained to Erickson that the test taken by Flowers for the junior range tech position was racially biased. Viewing plaintiff's deposition testimony in the light most favorable to plaintiff, the court concludes that plaintiff's testimony is marginally sufficient to permit an inference that plaintiff complained to Erickson regarding racial discrimination as to Flowers' nonselection. (Young depo., pp. 169-76).

the doubt, the court assumes, for purposes of this analysis, that plaintiff's complaint to Erickson occurred no later than December 31, 2004.

Plaintiff argues that his disciplinary write-ups followed his complaint in quick succession and, therefore, that he has provided sufficient evidence of causation to overcome defendant's motion for summary judgment. In Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004), the Eleventh Circuit discussed the temporal proximity required to establish causation:

> We construe the causal link element broadly so that "a plaintiff merely has to prove that the protected activity and the ... [adverse] action are not completely unrelated." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir.1998). "A plaintiff satisfies this element if [s]he provides sufficient evidence" of knowledge of the protected expression and "that there was a close temporal proximity between this awareness and the adverse ... action." Shotz [v. City of Plantation, 344 F.3d 1161, 1180 n. 3 (11th Cir. 2003)](quoting Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999)). A "close temporal proximity" between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case. See Olmsted, 141 F.3d at 1460. We have held that a period as much as one month between the protected expression and the adverse action is not too protracted. See Wideman [v. Walmart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998)](citing Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir.1986)).

> The Supreme Court has stated that "mere temporal proximity between ... knowledge of protected activity and an adverse ... action ... must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (citations omitted). The Court cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection. See id. (citing Richmond v. ONEOK, 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient) and Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month period insufficient)). If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law. In Wascura v. City of South Miami, we held that "Wascura failed to present evidence from

> which a reasonable jury could find any causal connection between Wascura's notice to the Commissioners in January 1995 of her potential need to take time off to care for her son and her subsequent termination on May 16, 1995." 257 F.3d 1238, 1248 (11th Cir.2001).

Higdon, 393 F.3d at 1220. In the present case, the first disciplinary write-up after 2004 occurred on March 3, 2005. The second was almost eleven months later, on January 26, 2006 and, after the April 3, 2006 report that plaintiff's inventory was not correct, Erickson recommended to Garrett that plaintiff be terminated. The actual termination occurred on May 30, 2006. (Exhibits 1, 41 and 46 to Young depo.; Garrett dec., ¶¶ 10-11).

The temporal proximity of the first-write-up to the complaint of discrimination is arguably sufficient to permit an inference of causation, since the adverse action occurred just over two months after December 31, 2004. However, given the extended time period between that write-up and the next – nearly eleven months – the evidence is not sufficient to permit an inference of causation as to the January 26, 2006 write-up or any subsequent adverse action. The January 2006 write-up is simply too remote in time from the next previous write-up to give rise to a reasonable inference – absent any other evidence of causation – that it was part of a chain of retaliatory adverse actions. In other words, the long hiatus between disciplinary write-ups precludes the inference that might arise if the January 2006 write-up were part of a series of closely-spaced adverse actions which began shortly after plaintiff's complaint. See Moron-Barradas v. Department of Education of the Commonwealth of Puerto Rico, 488 F.3d 472, 481(1st Cir. 2007)(EEOC charge filed on April 12, 2000; causation not established by temporal proximity as to adverse action on August 27, 2001, where more than eight months had elapsed since the last date in a series of

allegedly retaliatory events occurring between April 12, 2000 and November 27, 2000). Thus, plaintiff has arguably established a *prima facie* case of retaliation only as to the disciplinary write-up of March 3, 2005.

However, defendant has articulated a legitimate reason for the write-up – *i.e.,* that when approached by Thomas Lavar, a quality control inspector performing a spot-check, plaintiff did not have a current PMCS worksheet with him documenting that he had performed the required checks of his assigned vehicle. (Erickson dec., ¶ 21; Lavar dec., ¶ 4; Exhibits 20, 39 and 41 to Young depo.). Erickson also states that when he authorized this write-up, he "was aware that Mr. Lavar was very frustrated with Mr. Young on this issue." (Erickson dec., ¶ 21). Lavar testified by declaration that plaintiff "had numerous PMCS form violations," and that Lavar "found him many times without the form in his possession which he was supposed to keep at all times." (Lavar dec., ¶ 4). Plaintiff testified that he performed the maintenance check of the vehicle but admits that he did not document it on a PMCS form at the time of the check, as he is required to do. (Young depo., pp. 211, 214-15).

As noted above, plaintiff contends that he is similarly situated to Chris Hines. In view of plaintiff's "numerous PMCS form violations," and Erickson's awareness of Lavar's frustration with plaintiff on this issue, plaintiff cannot show that he and Hines were sufficiently similarly situated with respect to the misconduct at issue. Additionally, as discussed above, plaintiff has not shown that Hines received a lesser disciplinary action for similar misconduct. The fact that Hines received the *same* disciplinary action for his

Lockout/Tagout violation – a write-up and one year probation –  as did plaintiff for his February 2005 failure to comply with the PMCS procedures does not present an issue of fact regarding whether the defendant's articulated reason for its disciplinary action against plaintiff is pretextual. See Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000)("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.").  Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendant's motion for summary judgment (Doc. # 21) is GRANTED.  A separate judgment will be entered.

Done, this 31st day of March, 2008.

/s/ Susan Russ Walker                                
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

22